(No. 43583.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. FRANK POLK, JR., Appellant.

*Opinion filed October 1, 1973.*

JAMES J. DOHERTY, Public Defender, of Chicago (JAMES M. SAMMONS and VINCENT GAUGHAN, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BERNARD CAREY, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General and KENNETH L. GILLIS, ROGER HORWITZ, and DANIEL F. MURRAY (senior law student), Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Frank Polk, Jr., was convicted of armed robbery and the unlawful use of a weapon. He appeals directly to this court from the armed-robbery conviction for which he was sentenced to the penitentiary for a term of 10 to 20 years. He now contends that he was denied a fair trial; that the trial court erred in denying his motion for a substitution of judges and that his sentence was excessive.

The facts giving rise to the primary issues occurred prior to trial. On Friday, May 22, 1970, defendant, who was represented by an assistant public defender, appeared before the Honorable Saul Epton, a judge of the circuit court of Cook County. Defense counsel stated he was

ready for trial but the court set the trial date for Monday, May 25, 1970.

On that day the court began to select a jury when defense counsel stated that defendant requested a continuance. The court inquired as to the reason and, after a brief conference with defendant, defense counsel informed the court that the basis for the motion was defendant's belief that counsel was incompetent. This motion was denied and defendant arose and proceeded to leave the courtroom. After defendant was returned, he personally requested a change of venue. The court instructed defendant that his counsel was the appropriate party to make defense motions and further informed him that the trial would proceed. Defendant asked whether the matter would continue even though he was not ready for trial and did not have any witnesses present who would testify in his behalf. The court stated that a jury was merely being selected and defendant would have ample time to procure witnesses. Defendant then sought to waive a jury but the court refused to accept a waiver at this time. Defendant stated, "I want to leave and you pick the jury ***. I am not going to be ready when he wants to." Defendant again left the courtroom at this point. The court apologized to the prospective jurors and requested they leave the courtroom so that the matter might be resolved. The court entreated defense counsel and members of defendant's family to reason with him. During this discussion defense counsel stated he was prepared for trial.

It is to be gathered from the record that over fifteen minutes elapsed before defendant and members of his family re-entered the courtroom. The court instructed a deputy sheriff to place defendant in his chair and to handcuff him if necessary, but defense counsel informed the court that defendant would cause no further disturbance.

The court inquired if defendant wanted to waive a

jury trial and he replied "I have no comments." However, a short time later defendant said he wished to waive a jury and the following colloquy ensued:

> "THE COURT: Do you understand what a jury trial is, Mr. Polk?
>
> DEFENDANT POLK: (No response)
>
> THE COURT: You just said you wanted to waive a jury, Mr. Polk, is that correct?
>
> DEFENDANT POLK: (No response)
>
> THE COURT: Let the record show that Frank Polk, Jr., in open court said he wished to waive a jury.
>
> DEFENDANT POLK: I haven't said anything."

The court reporter read the pertinent portion of the proceedings which clearly indicated defendant's request and the following discussion occurred:

> "THE COURT: Did you hear the court reporter read that you said 'I want to waive my right?'
>
> DEFENDANT POLK: Your Honor, no disrespect to the court, but I have no comment to make, none whatsoever."

The court refused at this time to permit a waiver of a jury. The prospective jurors returned to the courtroom and the remainder of the day was used to question them. Four jurors were selected this day and the cause continued.

The following day, outside the presence of the jurors, defendant informed the court that he was ill, due to an infection which had resulted in a swelling in his testicle. The court denied the motion for a continuance but stated that a physician would examine defendant. Defendant responded, "You mean, you're going to make me sit here while I'm in pain? *** Yes, sir, you're going to have static, then because I'm in pain." Apparently, at this point Deputy Sheriff Johnson used force to place defendant in his chair. The court cautioned Johnson as to the method utilized and ordered defendant handcuffed to the chair. Defendant claimed he had been hit in the eye and could not see. The court, however, intimated that defendant was exaggerating his condition.

The prospective jurors were brought into the courtroom and the court attempted to inform the jury as to the events which had transpired. However, there were repeated comments during this time by defendant of which the following excerpts are illustrative.

"THE DEFENDANT: I want the jury to know that you let the bailiff hit me in the eye, before they came in, and everybody else know.

\* \* \*

You hit me once, might as well hit me again.

\* \* \*

No, you don't explain nothing. All I know is you're forcing me into trial. You might as well do as you want to do.

\* \* \*

I don't want any part of this trial, he hit me in my eye.

\* \* \*

That's all beside the point, I'm not going to sit here and be still. You might as well get used to me interrupting you. He hit me in the eye and my sight is damaged and going.

\* \* \*

THE COURT: Now, at this point, Mr. Polk has advised the court and the ladies and gentlemen of the jury that he intends to disrupt the operation—

THE DEFENDANT: Constantly, constantly."

After this exchange, the court ordered defendant returned to jail and defendant replied "I told you, I didn't want to go to trial in the first place." Defense counsel accompanied defendant as they left the courtroom.

Following consultation with respective counsel, the court granted the State's motion for a mistrial because it feared that defendant's behavior may have irreparably prejudiced the prospective jurors. It further directed that defendant be examined by the Behavior Clinic. This report, which was filed three weeks later, concluded that defendant suffered from a sociopathic personality disturbance but understood the nature of the charge against him and was able to cooperate with counsel.

Later, on May 26, 1970, a hearing was conducted without defendant being present, although defense counsel was there. During its introductory statement the court commented on defendant's unruly behavior that day and observed that Deputy Sheriff Johnson had told defendant to be quiet after which defendant spread himself on the floor and complained of pain. Johnson testified that as he was escorting defendant back to his cell the latter informed Johnson he had accomplished his purpose by having a mistrial declared and that he was not hurt and harbored no resentment against this witness. Defense counsel stated, "He [defendant] assured me there was no animosity by him toward Johnson *** at that point."

On July 7, 1970, after two additional continuances had been granted on behalf of defendant, a motion was presented for a substitution of judges based upon the court's alleged prejudice, which defendant claimed was demonstrated by its prior characterization of him as an actor who was attempting to delay the proceedings. The court assured defendant that he would receive a fair trial and his past activities would not influence it. The court further said this motion was frivolous and was designed merely to delay the trial. Defendant then stated that he believed the court ordered the bailiff to hit him during the prior proceedings. During this discussion the court informed defendant that he would not be held in contempt for his prior conduct and reiterated its intention to afford defendant a fair trial. Defendant was requested to conduct himself properly and he replied,

> "Give me the contempt, man, I don't give a fuck about no contempt. That's not going to satisfy me with no five years in the penintentiary or twenty. I don't give a flying fuck what you give me. You won't tell me you going to give me a fair trial."

The court denied defendant's *pro se* oral motion for a reduction of the charge and set trial for July 20, 1970. This action elicited the following comments:

"THE DEFENDANT: Right then? You going to deny me a motion before you even see it, man. How can you give me a fair trial? You've broken all my constitutional rights. How can you give me—

\* \* \*

Oh, man, motherfuck you. Now, motherfuck you. I'm going to do the same thing here, too."

On July 20, 1970, defense counsel informed the court of defendant's desire to waive a jury trial and defendant expressed his views that he was not prepared for trial, that he believed the court was biased, and that he wanted his counsel dismissed. After consideration of this matter, the court denied the waiver, assured defendant that his attorney was competent and he would receive a fair trial. Jury selection began but was abated when the court concluded it must accede to defendant's request to waive a jury. A written jury waiver form was signed by defendant, his motion for substitution of judges was again denied, and trial commenced.

The evidence established that about 3:00 A.M. on December 27, 1969, a cab driver picked up defendant and drove him to the requested location, whereupon defendant, who had a revolver, announced the robbery. A police car on routine patrol pulled behind the taxicab and its spotlight was directed on the rear portion of the cab. At defendant's order, the cab driver sped away with the police vehicle in pursuit. Due to the slippery street conditions the taxicab crashed into a parked automobile several blocks away. Defendant alighted and began to run with the two police officers pursuing and firing many shots at defendant as he entered a trailer storage lot. This area was enclosed except for the entrance way. Other police officers arrived at the scene and one saw defendant enter the lot and go into a trailer. This officer placed defendant under arrest. A glove was found on the ground near this trailer and underneath it police discovered a loaded .38-caliber snub-nose revolver. A matching glove was taken from defendant. The cab driver positively identified defendant as the

holdup man, and the two police officers who had followed the taxi testified that defendant was the man who fled from the disabled vehicle. No defense was presented. While defendant claimed he wished to testify on his own behalf, he declined to do so stating "I am scared to take the stand because I feel that you won't believe anything that I say, because you called me a liar."

To support his contention that he was denied a fair trial defendant argues that the court erred in not permitting him to voluntarily absent himself from the courtroom. He asserts that the underlying reason for the declaration of the mistrial on May 26, 1970, was the insistence that he remain in the courtroom. Citing *Illinois v. Allen, 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057,* defendant maintains this demand was contrary to law and he infers that he should have been tried *in absentia. Allen* does not support his position. There, the United States Supreme Court stated, "We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate court room atmosphere will be best in all situations." (397 U.S. at 343, 25 L. Ed. 2d at 359.) The trial court in its discretion may declare a mistrial. (*People v. Chaffin, 49 Ill.2d 356, 362; People v. Laws, 29 Ill.2d 221, 225.*) Based upon the record we find no abuse of discretion in the course of action adopted in an effort to curtail defendant's obstreperous behavior.

Defendant further contends that although the trial court declared that he would receive a fair trial its actions demonstrate a contrary conclusion. As indicative of this assertion, he directs our attention to the summary denial of his motions, the court's refusal to permit him to waive a jury trial on May 25, 1970, the fact that the court "caused [its] bailiffs to brutalize the defendant in order to stop him from waiving his right to be present," the court's characterization of him as an actor and its goading him

into the use of profanity at the July 7, 1970, proceedings when the court informed him it would waive contempt proceedings.

There is no basis for this contention. The record clearly demonstrates that defendant's irascible conduct was designed to delay an orderly judicial determination of the pending charge. The refusal of the trial court to accede to defendant's demand for a jury waiver on May 25, 1970, is not convincing proof that he was ultimately denied a fair trial. Defendant absented himself from the proceedings twice on this day, and when the court inquired as to this desire, defendant remained silent after denying he made the request. Nor does the record support his assertion that the court ordered or even countenanced the "brutality" of which he complains. Rather it would appear that the deputy sheriff was admonished by the court for his action and thereafter the trial court directly instructed its personnel that only minimal custodial procedures were to be used. We further find the record does not substantiate any inference that the court "goaded" defendant into the use of profane language. In the context in which this incident arose, we conclude that defendant's outburst was related to his frustration in not achieving his goal of further delay.

Defendant also maintains the court erred in denying his motion for a substitution of judges based on the allegation of prejudice. He argues that on two occasions (July 7 and 20, 1970) the court denied this motion without affording him a hearing, although counsel was permitted to orally argue the matter. Thus he concludes the allegation must be taken as true and that his conviction should be reversed and the cause remanded for a new trial. The applicable statute provides that "any defendant may move at any time for a substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." Ill. Rev. Stat. 1969, ch. 38, par. 114—5(c).

Defendant's allegation of prejudice was supported entirely by portions of the transcript of former proceedings in which the court suggested defendant was attempting to delay trial by his theatrical behavior. Under the circumstances presented, the hearing afforded defendant was sufficient. As previously observed, we believe that the record supports the court's observations that defendant had embarked upon a course of conduct designed to create delay. All matters related to the alleged prejudice arose during other proceedings before the court. The court itself was in the best position to determine if it may have been prejudiced by defendant's disruptive acts. It informed defendant that it had not, and repeatedly assured him he would receive a fair trial. We believe the comment of the majority of this court in *People ex rel. Sears v. Romiti, 50 Ill.2d 51, 55, cert. denied, 406 U.S. 921,* is appropriate in this instance. "There has been an increasing tendency in criminal cases to try some person other than the defendant, and some issue other than his guilt." The evidence presented against defendant leaves no doubt as to his guilt. His trial was properly conducted despite the difficult circumstances which arose during the preliminary proceedings as a result of defendant's deliberate attempt to forestall trial.

Finally, defendant suggests his minimum sentence be reduced to "time served." Prior to sentencing in this case the State informed the court that in 1967 defendant had received one year supervision for aggravated assault and discharge of a firearm. In March, 1968, defendant had pleaded guilty to three counts of robbery and received concurrent prison sentences of two to five years. Less than two years later he committed the present offense. We find that the sentence imposed is not inappropriate under the circumstances.

For these reasons the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*