THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARCADIO MERCADO, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1102

Opinion filed March 30, 1993.

Sheldon L. Banks, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Mark A. Ertler, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

A jury convicted defendant Arcadio Mercado of possession of a controlled substance with intent to deliver in violation of section 401.1(a)(1) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(1)), and the trial judge sentenced him to 20 years in the custody of the Illinois Department of Corrections. On appeal, he advances three assignments of error: (1) whether he had sufficiently shown that the trial judge was prejudiced against him, thus warranting a substitution of judges; (2) whether the judge unduly restricted his ability to impeach the credibility of a police informant with regard to his drug addiction; and (3) whether the judge abused his discretion by sentencing defendant to a 20-year term of imprisonment.

On July 22, 1988, defendant was arrested by agents of the Illinois State Police and the Federal Drug Enforcement Agency on a charge of possessing, with intent to deliver, 201.1 grams of heroin, for which he was subsequently indicted by a grand jury. In the two-year period before the action went to trial, defendant brought a series of motions including one to quash his arrest and suppress all evidence obtained as a result of his arrest, which he alleged to have been illegal, and another seeking to dismiss the indictment because it was alleged to have been returned in violation of article 112 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 112—1 et seq.) Both motions were denied by the trial court after evidentiary hearings.

On November 28, 1990, the eve of defendant's trial, his counsel requested that an interpreter be appointed for the benefit of his Spanish-speaking client, but the court denied the request. Thereafter, counsel, alleging that the court was biased against him and his client, moved for a substitution of judges. The court replied that although it felt counsel had acted unprofessionally, it harbored no ill will toward him or defendant. Defendant then filed a written motion for a substitution of judges pursuant to section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 114—5), and a hearing on the motion was held before Judge Reyna. After entertaining argu-

ment and reading the transcript of the proceedings which precipitated the motion, Judge Reyna denied it, finding that defendant presented insufficient evidence to demonstrate that Judge Kelley was biased against him. The case was consequently returned to Judge Kelley.

The following evidence was adduced at defendant's trial. Special Agent Guerra, a six-year veteran of the Illinois State Police, who was assigned at that time to a narcotics interdiction unit, testified that on July 22, 1990, he received word that an individual known as "Kayo," who was described as a 40-year-old Hispanic male driving a blue "Olds 88" with the license number FN 2686, would deliver a large quantity of heroin that day between 11 a.m. and 11:45 a.m. in the parking lot of a fast-food restaurant on the north side of the City of Chicago. A check of the Secretary of State's motor vehicle records disclosed that an automobile matching that description was registered to an Arcadio Mercado residing at what later proved to be defendant's address. Guerra and other agents of the State Police and the Federal Drug Enforcement Agency decided to pursue this lead and arranged a surveillance of the fast-food parking lot.

At 11:17, another agent on the scene radioed Guerra, informing him that a blue "Olds 88" with the correct license number, driven by an individual matching "Kayo's" description, was approaching his position. After the Olds came to a stop, Guerra and his partner parked their vehicle behind it, and Guerra approached the driver's window. With his weapon drawn, he tapped the window, informed the driver, defendant, that he was an agent of the Illinois State Police, asked him why he was in the parking lot, and finally requested that he exit the vehicle. After Guerra opened the car door, defendant alighted from the vehicle and told the officer that he was at the restaurant to have lunch.

Meanwhile, Guerra's partner, Agent Glynn of the DEA, conducted a search of the vehicle and discovered a plastic bag which contained a brown powdery substance, two scales calibrated for measuring grams, and a bag containing what the officer believed to be cannabis. A field test established that the powder was an opium derivative, and a later police lab test conclusively found it to be heroin. Agent Glynn testified that while searching defendant's vehicle, he reached under the dashboard where his experience had taught him that he would be likely to find the narcotics, and it was there that he found the heroin, scales and marijuana, as well as many small plastic envelopes which are often used to package small, salable quantities of heroin.

Defendant testified that he was the assistant manager of a grocery store where he had been employed for the past 12 years. On the

day of his arrest, he went to the fast-food restaurant near his store to have lunch as he often did. He further testified that earlier that day, he met a man he knew as Griffin at a local gas station. There, Griffin informed him that he was experiencing difficulty with his car and asked defendant for a ride to his methadone treatment center. After defendant agreed to give him a ride, Griffin waited alone in the auto while he filled it with gasoline. Defendant disavowed any knowledge of the heroin or drug paraphernalia found in his car three hours later, and stated that Griffin was the only individual who had access to his automobile that day. On cross-examination, defendant admitted to knowing Griffin for at least a year before the incident and that he often lunched with him at the fast-food restaurant where he was arrested.

The State called Charles Griffin in rebuttal. He identified defendant for the record and denied that he met defendant at any gas station on the day in question or that he planted the heroin in his car. He also confessed to being a heroin addict. On cross-examination, defendant elicited that Griffin had been arrested for possession of "pills" and that although undergoing methadone treatment, he still persisted in using heroin periodically. The court sustained the State's objections to questions inquiring how Griffin ingested heroin and a request to show the jury whether his arms were scarred by needle marks.

After deliberation, the jury found defendant guilty as charged. At the sentencing hearing, the State, seeking more than the minimum nine-year sentence, relied upon the quantity of the heroin seized and defendant's prior drug crimes, a State conviction for possession and a Federal conviction for distribution of a controlled substance as factors in aggravation. Defendant mentioned his work experience, and his closely knit and deeply rooted family ties in mitigation and as tending to show his rehabilitative capacity. The trial court, citing his two prior drug-related convictions, and commenting that seven years in Federal correctional facilities had not dissuaded defendant from committing the instant crime, found that such a record militated against finding great rehabilitative potential in him. It also referred to the need to deter defendant and others and felt that a 20-year term would take some of the luster off drug trafficking. It therefore sentenced him accordingly, after which defendant filed a timely notice of appeal.

## I

In his first allegation of error, defendant argues that Judge Reyna mistakenly denied his section 114—5(d) motion for a substitution of

judges because the judge before whom his case was ultimately tried manifested prejudice against him. Thus, he asserts that due to Judge Reyna's error, he was not tried before an impartial jurist and must be granted a new trial. The State offers two responses: (1) that defendant has not adequately preserved this issue for appeal because the record fails to contain a report of the proceedings held before Judge Reyna; and (2) that defendant did not bear his burden of establishing actual prejudice.

The State's waiver argument is unavailing. Although the initial record filed in this case omitted a report of the proceedings before Judge Reyna, the State overlooks that with leave of this court, defendant filed a supplemental record which contains a transcript of that hearing.

Section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 114—5) provides the procedure to be used when an accused alleges that the judge before whom he is to appear is so prejudiced against him that he cannot receive a fair trial. Since defendant brought his motion seeking a substitution of Judge Kelley more than 10 days after being placed on that judge's trial call, he was not entitled to an automatic change of venue, as allowed by section 114—5(a). His motion was therefore brought under the provisions of section 114—5(d), which states in pertinent part:

"[T]he State or any defendant may move at any time for substitution of judge for cause, supported by affidavit." Ill. Rev. Stat. 1987, ch. 38, par. 114—5(d).

In construing this section, our supreme court has held that the burden of proving cause rests on the party asserting it. (*People v. Hall* (1986), 114 Ill. 2d 376, 406, 499 N.E.2d 1335, 1346-47; *People v. Vance* (1979), 76 Ill. 2d 171, 178, 390 N.E.2d 867, 870; see also *In re C.S.* (1991), 215 Ill. App. 3d 600, 601, 575 N.E.2d 1, 2.) None of our courts has held explicitly what the extent of that burden is, but, based on our examination of the cases interpreting section 114—5(d) to require that the movant establish not merely the possibility of prejudice, but also that prejudice tangibly exists (*People v. Bianchi* (1981), 96 Ill. App. 3d 113, 119, 420 N.E.2d 1187, 1192; *People v. Nickols* (1976), 41 Ill. App. 3d 974, 979, 354 N.E.2d 474, 479; *People v. Breitweiser* (1976), 38 Ill. App. 3d 1066, 1069, 349 N.E.2d 454, 457; *People v. Robinson* (1974), 18 Ill. App. 3d 804, 807, 310 N.E.2d 652, 655), and in light of the holding of the United States Supreme Court that it constitutes a violation of due process when a defendant is tried before a judge who is probably prejudiced (*In re Murchison* (1955), 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625), we conclude that

the appropriate quantum of proof is to show prejudice by a preponderance of the evidence. See Tone, Comment, *Substitution of Judges in Illinois Criminal Cases*, 1978 Ill. L.F. 519, 533 (theorizing that it is implicit in Illinois law that preponderance is the proper standard to test assertions of judicial prejudice); see also Ariz. R. Crim. P. 10.1(c) (17 Ariz. Rev. Stat. Ann. (West 1987)) (rule worded similarly to section 114—5(d), which expressly provides preponderance as the requisite burden of proof).

Another question which commands fresh scrutiny in Illinois is the standard to be employed in reviewing determinations of charges of prejudice against the judiciary. In the past, the supreme court has manifested a clear deference to the trial court itself, finding it to be "in the best position to determine whether it has become prejudiced against the defendant." (*Hall*, 114 Ill. 2d at 406, 499 N.E.2d at 1347; see also *Vance*, 76 Ill. 2d at 178, 390 N.E.2d at 870; *People v. Polk* (1973), 55 Ill. 2d 327, 336, 303 N.E.2d 137, 141.) Such deference suggests that the reviewing court should reverse only if the trial court's finding of no prejudice constitutes an abuse of discretion. See *People v. Goodwin* (1973), 13 Ill. App. 3d 506, 301 N.E.2d 126 (abstract of opinion) (holding that the trial court did not abuse its discretion by denying motion to substitute which alleged that it was racially biased and thus could not fairly try an African-American defendant).

However, all but one of those cases were decided before the General Assembly amended section 114—5 to provide that a motion alleging actual prejudice must be resolved by some judge other than the one against whom the allegations are made. (Ill. Rev. Stat. 1983, ch. 38, par. 114—5(d), as amended by Pub. Act 81—1066, §1, eff. September 26, 1979.) Those cases arose in a context where the judge alleged to be prejudiced refused to grant the motion for substitution because he found, presumably after some objective introspection, that *he* harbored no bias against the defendant.[1] Thus, extreme deference was required of the reviewing court because the judge alleged to be prejudiced must be considered to have known beyond any doubt whether

---

[1]Although *Hall* was decided after the section was amended, the trial court may nonetheless be seen as determining its own bias because the defendant, while not moving in the trial court for a substitution of the judge, asserted on appeal that given what transpired in the court (defendant assaulted the judge with a chair), the court should have recused itself *sua sponte*, and its failure to do so was error. The *Hall* court employed the analysis more commonly relied upon to review a section 114—5(d) motion and found no prejudice.

he or she was actually incapable of maintaining complete impartiality toward the defendant.

■ Conversely, under the present version of the statute, since the resolution of a section 114—5(d) motion will be made by some judge other than the one who is the subject matter of the motion, the judge who will pass upon whether prejudice exists has no unique insight into the thought processes of the judge who is alleged to be biased, and therefore, the highly deferential abuse of discretion standard no longer seems appropriate. Instead, the rendering judge is asked to resolve a question of fact: whether the trial judge can impartially preside over defendant's trial. Consequently, in making this decision, the court is merely a trier of fact which, as with all fact finders, must weigh the evidence.

Accordingly, we deem the proper standard of review to be that a determination of prejudice or absence of prejudice will stand unless it is against the manifest weight of the evidence. We have invariably held that factual findings are against the manifest weight only when they are clearly erroneous or where the record commands an opposite conclusion. See, e.g., *Fakhoury v. Vapor Corp.* (1991), 218 Ill. App. 3d 20, 28, 578 N.E.2d 121, 127, *appeal denied* (1991), 142 Ill. 2d 653, 584 N.E.2d 128.

■ Applying that standard to the facts of this case, it cannot be said that Judge Reyna erred when he found that the trial court was not biased against defendant or his counsel. Disqualifying a trial judge from hearing a case on grounds of prejudice "is not, of course, a judgment to be lightly made." (*Vance,* 76 Ill. 2d at 179, 390 N.E.2d at 870.) The rule necessitating careful scrutiny of allegations of prejudice derives from the fact that a finding of bias will reflect unfavorably upon the judge, and that an allegation of prejudice "tends to disrupt the orderly functioning of the judicial system." (*Vance,* 76 Ill. 2d at 179, 390 N.E.2d at 870.) However, when applying such close scrutiny, we also assume that we are to remain faithful to the overriding concern of section 114—5 which, of course, is to ensure that the accused receives a fair trial. Our supreme court has held that a party asserting bias must demonstrate something more than the subconscious predilections of a judge which are inherent in all persons. That "something more" has been described as conduct of the court which manifests "animosity, hostility, ill will, or distrust towards this defendant." *Vance,* 76 Ill. 2d at 181, 390 N.E.2d at 872.

Defendant argues that the record here is replete with instances in which the trial court manifested its dislike of defendant's attorney and, thus, its predisposition to rule against defendant. Defendant

points to the court's initial reluctance to appoint an interpreter and contends that such refusal, coupled with the court's statement that defendant's attorney was acting unprofessionally, provides a sufficient quantum of evidence of bias to require disqualification. In addition, when defense counsel refused to continue without an interpreter, the trial court threatened him with contempt; and in response to counsel's for-the-record representation that he was no longer present in the court, it detained counsel and defendant in chambers. Defendant claims that this evidence allows for only one reasonable conclusion— that the trial court harbored animus toward his counsel and himself. He reasons, therefore, that Judge Reyna erred when he reached a contrary conclusion.

Since Judge Kelley affirmatively stated for the record that he had no anger or hostility toward defendant or his attorney, defendant, in effect, asks us to disbelieve that statement and conclude that given the activity of counsel, the court could be nothing but hostile toward him. However, "[w]e cannot presume a failure of impartiality of a trial judge even under extreme provocation." *Hall,* 114 Ill. 2d at 407, 499 N.E.2d at 1347.

A comparison of the facts *sub judice* with the facts in *Hall* and the supreme court's judgment in the case conclusively establishes that Judge Reyna's determination of no prejudice here is not in error. In *Hall,* the defendant, while in chambers discussing the possibility of proceeding *pro se,* struck the trial judge in the head with his fists and a chair. Thereafter, the defendant, although not acting within the procedural confines of section 114—5(d), asked the court to recuse itself. The court denied the request and avowed for the record that it would be fair and impartial. After reviewing the record, the supreme court found that the trial court stayed true to its word, as it failed to show any unfairness, nor did it treat either party with anything less than an acute even-handedness at the subsequent trial; thus, the defendant did not sustain his burden to prove the trial judge's lack of impartiality. See also *People v. Jimenez* (1989), 191 Ill. App. 3d 13, 547 N.E.2d 616 (affirming a finding of no prejudice toward the accused even where some unknown incident occurred which caused the trial court to clear the court and order the State to file attempted murder charges against the defendant), *appeal denied* (1990), 131 Ill. 2d 563, 553 N.E.2d 399.

The provocation before the court here was comparatively mild when juxtaposed to that in *Hall* and *Jimenez.* Defense counsel, on the day of trial, and after two years of proceedings in the cause, asked the court to appoint an interpreter. The court denied the request, re-

minding counsel that defendant had been able to understand English at the 25 or so prior proceedings conducted in the action. The court suggested that defendant may have had ulterior motives in making the request, *i.e.*, to engender sympathy from the jury. Also, the court feared that the absence of the interpreter could raise doubts about the validity of those earlier uninterpreted proceedings.

Counsel protested that he would not proceed until an interpreter was present, and if the court would not appoint one, he would retain one at his own expense. The court refused the offer, and counsel proceeded to make a dramatic exit for the purposes of the record, stating that he was no longer present to protect his client's interest. The court threatened to cite him for contempt, ordered him detained and held in chambers along with his client, while it attended to other matters. After approximately 45 minutes, it recalled defendant's case and accepted the apology of counsel. Although it informed counsel that it deemed his conduct unprofessional, it rejected his assertion that the incident would visit the court's alleged hostility toward counsel on defendant. Defendants are not entitled to extract blood oaths from trial judges attesting to their fairness.

Defendant cites no decision made by the trial court which could be construed as going back on its vow to remain neutral toward defendant and his counsel. In fact, defendant makes no claim that the trial court's supposed bias against him played any role in the two decisions he now cites as errors in this appeal. Since the defendant points to nothing in the record either before, during or after trial which affirmatively establishes that the court was prejudiced, he fails to bear his burden of establishing prejudice. Moreover, we must remain true to the admonition in *Hall* that reviewing courts should be chary of mandating a substitution of judges where the defendant's action brought about the alleged prejudice, lest it invite future misconduct contrived for that very purpose. (*Hall*, 114 N.E.2d at 407, 499 N.E.2d at 1347.) Accordingly, we agree with Judge Reyna's determination and find that the trial judge was unbiased toward defendant.

## II

Defendant next maintains that the trial court impermissibly interfered with his right to cross-examine a key witness for the prosecution when it sustained an objection made by the State. While cross-examining Charles Griffin, an informant who served as the intermediary between defendant and police and who arranged the "drug buy" for which defendant was on trial, defendant asked him if he bore any needle marks on his arm resulting from his admitted her-

oin addiction. He also inquired how the witness ingested heroin if not intravenously. The court sustained objections to both questions. Defendant claims that in so doing it grievously impaired his ability to impugn the credibility of this witness before the jury and that, therefore, he is entitled to a new trial. The State argues that in view of the overwhelming evidence establishing defendant's guilt, any limitation of cross-examination was harmless error.

While the cross-examination of a witness which is designed to explain, modify or discredit anything to which the witness has testified on direct examination is a matter of right (*People v. Barr* (1972), 51 Ill. 2d 50, 51, 280 N.E.2d 708, 710; *People v. Torres* (1990), 200 Ill. App. 3d 253, 265, 558 N.E.2d 645, 654, *appeal denied* (1991), 136 Ill. 2d 553, 567 N.E.2d 340), the trial court retains the ability to limit its scope, and its decision to do so will not be disturbed unless it constitutes an abuse of discretion resulting in manifest prejudice to defendant. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 194, 552 N.E.2d 726, 741-42; *People v. Coleman* (1991), 222 Ill. App. 3d 614, 626, 584 N.E.2d 330, 338, *appeal denied* (1992), 144 Ill. 2d 637, 591 N.E.2d 25.) In *People v. Strother* (1972), 53 Ill. 2d 95, 290 N.E.2d 201, the court held that it amounted to such an abuse to preclude defense counsel from showing the jury the needle-mark scarred arm of a witness for the prosecution. The court found the question of whether one is a drug abuser important when assaying the weight to be afforded to his or her testimony. It reasoned that because

" 'the testimony of a narcotics addict is subject to suspicion due to the fact that habitual users of narcotics become notorious liars[ ] (*People v. Boyd* [1959], 17 Ill. 2d 321, 326)[,] [t]he presence of any scars evidencing a recent use of narcotics would not only affect the credibility of the witness insofar as the recent use of narcotics was concerned, but also might cast serious doubt upon the truth of the balance of his testimony.' " *Strother*, 53 Ill. 2d at 99, 290 N.E.2d at 204, quoting *People v. Lewis* (1962), 25 Ill. 2d 396, 399, 185 N.E.2d 168, 169.

See also *People v. Adams* (1985), 109 Ill. 2d 102, 485 N.E.2d 339 (reaffirming *Strother*'s holding that drug abuse is relevant to witnesses capacity for truthfulness). But see *United States v. Robinson* (7th Cir. 1992), 956 F.2d 1388 (questioning the validity of the belief that witnesses who used narcotics are more likely to be untruthful).

However, we recognize that our supreme court's decisions in *Lewis, Strother*, and *Adams* must be modified by the elemental principle of cross-examination that allows the court to preclude inquiries which would be unduly harassing or repetitive. (*Davis v. Alaska*

(1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Triplett* (1985), 108 Ill. 2d 463, 475, 485 N.E.2d 9, 15; *People v. Matthews* (1990), 205 Ill. App. 3d 371, 413, 563 N.E.2d 1113, 1138.) After recognizing that this basic proposition is implicit in the rule of *Strother*, it is clear that in the case at bar, the trial court did not impermissibly interfere with defendant's ability to cross-examine informant Griffin, and, therefore, defendant is not entitled to a new trial.

In *People v. Givens* (1985), 135 Ill. App. 3d 810, 825, 482 N.E.2d 211, 221-22, the defendant, citing *Strother*, argued that the court erred in not allowing him to offer the testimony of two individuals who would certify that a key State witness was a heroin addict. The court rejected the argument based on the fact that the State's witness admitted using drugs for years and admitted that a few days before the incident to which he attested he took cocaine. The court held that the two impeachment witnesses would neither add to nor contradict the witness' own words and that, thus, since the jury had sufficient information with which to assess the witness' credibility, the court did not abuse its discretion by prohibiting the cumulative proof. See also *People v. Ganci* (1978), 57 Ill. App. 3d 234, 240, 372 N.E.2d 1077, 1082 (finding no error in court's limitation of questioning concerning witness' drug abuse so long as jury has sufficient evidence to make a reasoned assessment of his credibility).

■ Here, during direct examination, Griffin admitted that he was a heroin addict, and on cross-examination he reaffirmed that he abused drugs. Defendant further elicited that Griffin was currently undergoing methadone treatment and that even while under the treatment, he had still used heroin occasionally. From that evidence, the jury could easily grasp that Griffin used heroin in the past, that he was under treatment currently for his addiction, and that he periodically disregarded treatment and used heroin. From such testimony, his credibility was more than sufficiently brought into question, and having him describe how he ingested heroin or showing the jury his needle-scarred arms would not add to his impeachment, but would only be redundant of evidence already before it.

The superfluous nature of the impeachment material defendant sought to offer here separates this case from *Strother*. There, after the defendant was rebuked in his effort to establish that the State's witness used heroin only days before the trial, he surrendered his efforts to advise the jury of the witness's drug abuse. It was consequently unable to use that information in determining if the witness was worthy of belief. Here, Griffin, by his own words, paraded his addiction before the jury; consequently, it had before it all it needed in

order to be completely informed in its determination of his credibility. Since defendant gained all the benefit possible from Griffin's testimony, he cannot successfully assert prejudice; therefore, the trial court did not abuse its discretion by limiting his questioning of Griffin.

### III

In his final argument, defendant contends that the trial court did not consider his work history or his closely knit family in gauging his rehabilitative potential, and that it therefore erred by imposing upon him a sentence of 20 years. The State responds that defendant waived this issue by failing to make a contemporaneous objection to the judge's meting out of an allegedly erroneous sentence, and that in any event, the court did not abuse its discretion by imposing a sentence well within the confines of the statutory guidelines.

The State's first claim warrants scant attention because we have flatly rejected it only recently. In *People v. Davilla* (1992), 236 Ill. App. 3d 367, 387, 603 N.E.2d 666, 679, the State made the assertion that the defendant did not preserve the issue of the propriety of his sentence by not objecting to it at the hearing, but we held that a defendant need not make a record in order to preserve for review questions regarding sentencing.

With regard to the merits of defendant's complaint, our supreme court has held consistently that the imposition of sentence is within the trial court's discretion and that a sentence imposed will not be altered by a reviewing court unless the trial court abused its discretion. (See *People v. Ashford* (1988), 121 Ill. 2d 55, 88, 520 N.E.2d 332, 346; *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883; *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330.) Moreover, a sentencing court's decision is cloaked with a presumption of correctness. *People v. Choate* (1979), 71 Ill. App. 3d 267, 274-75, 389 N.E.2d 670, 676.

■ Defendant offers nothing to rebut this presumption, nor, after a review of the record, could he, for the trial court fully complied with both the substantive and procedural aspects of sentencing as prescribed by the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1000—1—1 *et seq.*) Defendant was convicted of possessing with intent to deliver more than 100 grams but less than 400 grams of heroin (Ill. Rev. Stat. 1987, ch. 56½, par. 1401), a Class X felony. The term of incarceration for that crime ranges from 9 to 40 years. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(1).) Citing his recidivism, the court sentenced him to 20 years, a period well within the permis-

sible range. Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2 (providing that a history of prior criminal activity is a valid reason for imposing a more severe term of imprisonment).

Defendant contends that the court, in reaching this decision, looked only to the crime for which he was tried and his two prior drug-related convictions, paying no heed to his rehabilitative potential. However, where mitigating factors are presented to the court, it is presumed to have considered them in reaching its decision, even where it does not mention the factors or detail the weight it ascribed to them. (*People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14; *People v. Boclair* (1992), 225 Ill. App. 3d 331, 335, 587 N.E.2d 1221, 1224.) Here, not only does defendant fail to overcome this presumption, but we need not even invoke it to affirm the sentence imposed, for the court expressly considered and found lacking any likelihood that defendant could be rehabilitated. While passing sentence, it referred to the fact that defendant was married and had children, and it stated that it took those mitigating factors into consideration. But, given defendant's two previous convictions for drug-related offenses, it found that he displayed a penchant for distributing narcotics. It felt that the only way to deter him and others from drug trafficking was to incarcerate him for a term longer than the seven years that he received for his earlier Federal drug crime conviction.

The trial court's decision here manifests strict adherence to the admonition of the supreme court in *People v. Heflin* (1978), 71 Ill. 2d 525, 545, 376 N.E.2d 1367, 1376, that "[i]n [Illinois], the spirit and purpose of the law are upheld when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant." Since the sentence imposed on defendant precisely comports with that rule, we have no cause to alter its sentencing determination.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McCORMICK, P.J., and HARTMAN, J., concur.