NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 230113-U

NO. 4-23-0113

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 31, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAMES ANDREW PATTERSON, | ) | No. 21CF1064 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1   *Held*: Because no reasonable argument can be made in support of this appeal, the motion of appellate defense counsel to withdraw from representing defendant is granted, and the circuit court's judgment is affirmed.

¶ 2   In a bench trial, the circuit court of McLean County found defendant, James Andrew Patterson, guilty of criminal trespass to a residence and domestic battery. The court sentenced him to imprisonment. He appeals. The Office of the State Appellate Defender (appellate defense counsel) has moved to withdraw from representing defendant, for in the view of appellate defense counsel no reasonable argument can be made in support of this appeal. We notified defendant of his right to respond, by a certain date, with additional points and authorities. He has not done so. In our review of the record, we agree that this appeal lacks any potential merit. Therefore, we grant the motion to withdraw, and we affirm the court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4	On October 12, 2021, the State charged defendant by information, which was made up of three counts. Each count charged defendant with committing an offense in McLean County on October 5, 2021. The first count was a Class 4 felony, and the other two counts were Class A misdemeanors. Count I charged defendant with criminal trespass to a residence (see 720 ILCS 5/19-4(a)(2), (b)(2) (West 2020)), alleging he entered Stephanie McWhorter's residence without authority. Count II charged him with domestic battery (see *id.* § 12-3.2(a)(1), (b)), alleging he scratched McWhorter. Count III charged him with another offense of domestic battery (see *id.* § 12-3.2(a)(2), (b)), alleging he grabbed her.

¶ 5	On October 20, 2021, a grand jury returned a bill of indictment, which consisted of only one count. This count charged defendant with the same offense of criminal trespass to a residence with which he was charged in count I of the information.

¶ 6	On November 5, 2021, defendant appeared with his attorney and pleaded not guilty to the indictment. (Counts II and III of the information were not mentioned at this hearing.)

¶ 7	On January 4, 2022, in a status hearing, defendant told the circuit court that because his appointed attorney had declined to adopt any of the *pro se* motions defendant had filed, defendant wanted to proceed *pro se*. The court decided to give the *pro se* admonitions at the next hearing.

¶ 8	On January 11, 2022, the circuit court gave defendant the *pro se* admonitions. The court explained the allegations in the three counts the State had filed against him (count I of the indictment and counts II and III of the information). The court explained that count I, criminal trespass to a residence, was a Class 4 felony, which normally was punishable by imprisonment for one to three years, but that because the State was seeking an extended term, this offense was punishable by imprisonment for three to six years. The court added there was also the possibility

of probation or conditional discharge for up to 30 months and a fine of up to $25,000. The court explained the substance of counts II and III, which charged defendant with two acts of domestic battery. These offenses, the court told him, were Class A misdemeanors, punishable by incarceration in the county jail for up to 364 days. Other potential punishments for domestic battery, the court added, were probation or conditional discharge for up to 24 months and a fine of up to $2500.

¶ 9 The circuit court then asked defendant if he understood the charges and the potential penalties. Defendant answered that he did not understand how he could have committed a domestic battery against McWhorter considering that, at the time of the alleged offenses, he no longer lived with her and was no longer in a relationship with her. The court responded that (1) if defendant represented himself, he would be expected to know the law just as an attorney would be so expected and (2) a family or household member within the meaning of domestic battery included someone with whom the accused formerly had a relationship. "That's fine," defendant responded.

¶ 10 Resuming the *pro se* admonitions, the circuit court told defendant that he had the right to an attorney and that if he could not afford an attorney, one would be provided for him. The court cautioned, however, that it would not appoint standby counsel.

¶ 11 The circuit court gave defendant plenty of other admonitions, over and above the foregoing admonitions that were required by Illinois Supreme Court Rule 401 (eff. July 1, 1984). The court had an extensive discussion with defendant about his readiness to represent himself in a jury trial, such as how he planned to conduct *voir dire*. After confirming with defendant that he still wanted to represent himself, the court allowed him to do so and relieved defense counsel from representing defendant.

¶ 12    On January 28, 2022, defendant requested a bench trial in lieu of a jury trial. He signed a jury waiver form. The circuit court then explained to him the difference between a jury trial and a bench trial, and the court warned him that once he waived his right to a jury trial, he could not get that right back. Defendant said he understood. The court asked him if anyone had induced him, by any threat or promise, to give up his right to a jury trial. He answered no. After confirming that he still wanted to waive his right to a jury trial, the court found the waiver to be knowing and voluntary, and the court scheduled a bench trial.

¶ 13    On April 15, 2022, which was the scheduled date of the bench trial, defendant requested that the circuit court reappoint the public defender. The court did so and rescheduled the bench trial for May 17, 2022.

¶ 14    On that day, defendant failed to appear. The circuit court issued a warrant for his arrest.

¶ 15    On August 11, 2022, defendant appeared in the custody of the McLean County sheriff. Judge Yoder presided over this hearing, the purpose of which was to address defendant's *pro se* motion for the substitution of Judge Workman with a different judge. The reason for the motion was, as defendant put it, "I have an open lawsuit against Workman in the District Courts right now." Defense counsel refused to adopt the motion and requested that it be stricken. Nevertheless, out of caution, to prevent any future proceedings in the case from being called into question, Judge Yoder chose to address the motion on its merits. He suggested that defendant explain, on the stand, why he thought Judge Workman was prejudiced against him. Defense counsel agreed to that suggested procedure.

¶ 16    Defendant was sworn, and defense counsel asked him to "state the reasons you think Judge Workman is prejudiced against you in this case." Defendant testified substantially as

follows. He had to go to the Illinois Department of Corrections "to do [his] parole time for violation of this case." On May 17, 2022, 30 days after his release, he "tried to hire an attorney, *** Ray Popurella." After defendant offered to hire him, Popurella telephoned Judge Workman to tell him he was taking over the case for the defense, but "Judge Workman denied that." Defense counsel asked defendant what he meant by Judge Workman's "den[ying] that." Defendant answered, "He told him he is not taking that case, that we are going to trial tomorrow." Defense counsel asked defendant if he had hired a private attorney since then. Defendant answered, "Well, how would I do that, sir, when I tried that, and he denied that[?]"

¶ 17        Defense counsel asked defendant if there were any other allegations against Judge Workman. Defendant answered that when granting his request for the reappointment of defense counsel, Judge Workman "gave me back the same attorney that he deemed ineffective." In other words, by defendant's understanding, when Judge Workman had granted his request to proceed *pro se*, Judge Workman had thereby determined that "the attorney [was] not doing the best of his ability." But then Judge Workman turned around and reappointed that same attorney.

¶ 18        Finally, defendant pointed out, "Your Honor, I do have the paperwork for the District Court took my lawsuit and opened the case against Workman and scheduled a court date for 8-9-22." Judge Yoder asked defendant, "And what are the allegations of your lawsuit?" Defendant answered, "The same exactly that I just presented."

¶ 19        Defense counsel still declined to adopt the *pro se* motion for a substitution of Judge Workman. He reasoned that defendant "could have hired any attorney he wanted at any point in time from May to today" and that attorney could have entered his or her appearance. If Judge Workman declined to continue the trial, it was up to that private attorney whether he or she wanted to sign on as defendant's attorney and try the case the next day.

¶ 20    The circuit court asked the prosecutor if he had any argument. The prosecutor responded that, under Rule 5.03 of the Rules of the Eleventh Judicial Circuit (11th Judicial Cir. Ct. R. 5.03 (Feb. 1, 2022)), any *pro se* motion filed by a represented party, except a motion alleging ineffective assistance, was to be stricken. Even so, the prosecutor addressed the merits of the motion. The prosecutor observed, first, that defendant did not even show up on the originally scheduled date of the bench trial. "And so," the prosecutor argued, "the idea that the judge denied his request for a private attorney when this defendant did not even show up at that hearing, I think is contrary to the record." Also, the prosecutor pointed out, it was the public defender, not Judge Workman, who decided which attorney from the public defender's office would represent defendant—and contrary to defendant's assumption, Judge Workman never found defense counsel to be ineffective.

¶ 21    Still choosing, out of an abundance of caution, to address the merits of the *pro se* motion, Judge Yoder found no evidence that Judge Workman was biased against defendant. Judge Yoder noted that Popurella never entered an appearance even though he had been free to do so. In Judge Yoder's view, it would be understandable if Judge Workman were unwilling to continue a trial that had already been rescheduled several times. Judge Yoder agreed that Judge Workman had merely appointed the public defender's office and that it was up to the public defender which attorney to assign to defendant's case. There was no indication in the record that Judge Workman ever found trial counsel to be ineffective. Finally, Judge Yoder reasoned that "the defendant cannot escape a judge or file a motion to substitute judge and then say, ['W]ell, you know what, I am suing him; so, therefore, he can't be fair [or] impartial against me.['] " Accordingly, Judge Yoder denied the *pro se* motion for substitution of judge and referred the case back to Judge Workman.

¶ 22        On August 15, 2022, a bench trial was held, with Judge Workman presiding. McWhorter testified that on October 5, 2021, defendant arrived at her apartment early in the morning, even though the owner of the property, the Bloomington Housing Authority, had banned him from the premises. The two argued over visitation of their children. Defendant grabbed McWhorter by the arm and spat in her face. He pushed her into her apartment, thereby "push[ing] himself into my house," as McWhorter put it. She identified photographs of her injuries, including a photograph of a bruise on the inner side of her right upper arm. A Bloomington police officer, Evan Hurt, testified he was the photographer. The photographs were admitted in evidence. The State rested.

¶ 23        The circuit court admonished defendant on his right to testify. Then there was a recess. When the proceedings were reconvened, defense counsel made a "motion for a directed verdict." After arguments, the court denied the motion. The defense rested. The court asked defendant whether it was his decision alone not to testify. He answered in the affirmative.

¶ 24        After closing arguments, the circuit court found defendant guilty on all three counts.

¶ 25        On September 12, 2022, defense counsel filed a "Motion for Judgement [*sic*] Notwithstanding the Verdict, or in the Alternative for New Trial." On October 25, 2022, at the sentencing hearing, the circuit court denied this motion because, in the court's view, the testifying witnesses were credible.

¶ 26        At the sentencing hearing, the prosecution introduced a group exhibit of text messages that defendant had sent to McWhorter. The prosecution called McWhorter, who authenticated the text messages, testifying that they were "all text messages that [she] received from [defendant]." Many of the messages were threatening. For example, one message, dated "Jul[y] 23," read, "I'll beat your ass half to death or I[']ll just come cut your f*** eyes outta your

skull so u can hear them grow up \*\*\*." Another message, dated "Sep[tember] 17," read, "Well u can trust I'm gonna look for u and beat your face in whore." Given these threats and defendant's prior criminal history, the prosecutor recommended an extended prison term of six years for criminal trespass to a residence.

¶ 27        Defense counsel argued that the main reasons for defendant's criminality were his drug addiction and his difficult childhood. Accordingly, defense counsel urged that, instead of imprisonment, probation or drug court would be fitting dispositions.

¶ 28        Noting that this was defendant's "twelfth felony offense" and that his threats against McWhorter had turned into actual violence, the circuit court sentenced defendant to six years' imprisonment on count I and to a concurrent term of 364 days' imprisonment on count II. The court found that count III merged into count II.

¶ 29        On November 28, 2022, defense counsel filed a postsentencing motion, which the circuit court denied on February 6, 2023.

¶ 30        On February 8, 2023, defendant appealed.

¶ 31                                II. ANALYSIS

¶ 32        Appellate defense counsel explores four potential issues for this appeal: (1) whether the State presented sufficient evidence that defendant was guilty of criminal trespass to a residence, (2) whether the waiver of counsel was proper, (3) whether the jury waiver was proper, and (4) whether the sentence was excessive.

¶ 33                        A. The Sufficiency of the Evidence

¶ 34        The first potential issue is whether the evidence was sufficient to support the conviction of criminal trespass to a residence. According to appellate defense counsel, when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could find

the elements of that offense beyond a reasonable doubt (see *People v. De Filippo*, 235 Ill. 2d 377, 384-85 (2009)), and arguing the impossibility of such a finding by a rational trier of fact would be untenable. We agree.

¶ 35      As charged, the Class 4 felony of criminal trespass to a residence charge was made up of the following elements: (1) defendant knowingly entered McWhorter's residence, (2) defendant entered her residence without authority to do so, and (3) defendant knew or had reason to know that when he knowingly entered her residence, someone else was present. See 720 ILCS 5/19-4(a)(2) (West 2020); Illinois Pattern Jury Instructions, Criminal, No. 14.18 (approved July 29, 2022). If McWhorter's testimony were believed, it proved the three elements of that offense. McWhorter testified that when pushing her into her house, defendant "pushed himself into [her] house." It is reasonably inferable that defendant knew he was entering her house. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (explaining that viewing the evidence in the light most favorable to the prosecution "means the reviewing court must allow all reasonable inferences from the record in favor of the prosecution"). McWhorter testified that the owner of the residence, the Bloomington Housing Authority, had banned defendant from the premises. Therefore, defendant lacked authority to enter McWhorter's rented residence. Finally, when pushing McWhorter into her residence and following her in as he pushed her, defendant must have known that someone else—namely, McWhorter—was in the residence when he made his unauthorized entry. The circuit court, as the trier of fact, found McWhorter to be credible. We would be justified in finding McWhorter's testimony to be insufficient "only where the record evidence compels the conclusion that no reasonable person could accept [the testimony] beyond a reasonable doubt." *Id.* The record does not compel such a conclusion. Therefore, we agree with appellate defense counsel that an argument against the sufficiency of the evidence would be frivolous.

¶ 36                                B. The Waiver of Counsel

¶ 37            The second potential issue is whether defendant validly waived his right to counsel. To be valid, a waiver of the right to counsel must be "voluntary, knowing[,] and intelligent." *People v. Haynes*, 174 Ill. 2d 204, 235 (1996). Under Rule 401(a), the circuit court must give certain admonishments to the defendant to ensure that the waiver of counsel is knowing and intelligent. The rule provides as follows:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> > (1) the nature of the charge;
> >
> > (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
> >
> > (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 38            On January 11, 2022, in open court, the circuit court explained to defendant the nature of each of the three counts. The court explained the minimum and maximum sentences for each count. As the court informed defendant, the sentence of imprisonment for the Class 4 felony of criminal trespass to a residence would be a minimum of one year and a maximum of three years, whereas an extended term of imprisonment, which the State was seeking, would be a minimum of three years and a maximum of six years. Also, the court admonished defendant that, for this Class

4 felony, he could receive probation or conditional discharge for up to 30 months and a fine of up to $25,000. Those admonitions appear to be correct. See 720 ILCS 5/19-4(b)(2) (West 2020); 730 ILCS 5/5-4.5-45(a), (d), (e), 5-4.5-50(b) (West 2020). The court further admonished defendant that the Class A misdemeanor of domestic battery was punishable by incarceration in the county jail for up to 364 days. Other potential punishments, the court added, were probation or conditional discharge for up to 24 months and a fine of up to $2500. Those admonitions likewise appear to be correct. See 720 ILCS 5/12-3.2(b) (West 2020); 730 ILCS 5/5-4.5-55(a), (d), (e) (West 2020). The court made sure that defendant understood the nature of the charges and the potential punishments. The court also made sure he understood that he had the right to an attorney and that if he could not afford an attorney, one would be provided to him. Finally, the court obtained defendant's acknowledgment that no one had induced him, by threats or promises, to give up his right to counsel. Therefore, by all indications, defendant's waiver of his right to counsel was voluntary, knowing, and intelligent. We agree with appellate defense counsel that no reasonable argument against the validity of the waiver could be made.

¶ 39                              C. The Waiver of a Jury

¶ 40          The third potential issue is whether defendant's waiver of a jury was legally effective. "[W]hile the circuit court must insure that a defendant's jury waiver is understandingly made, no set admonition or advice is required before an effective waiver of that right may be made." *People v. Tooles*, 177 Ill. 2d 462, 469 (1997). The circuit court admonished defendant extensively on his proposed waiver of a jury. In the view of appellate defense counsel, no reasonable argument could be made that defendant failed to understand his jury waiver. We agree.

¶ 41                      D. Whether the Sentence Was Excessive

¶ 42 The fourth potential issue that appellate defense counsel explores is whether the sentence of six years' imprisonment was an abuse of discretion. "The propriety of a sentence is a matter lying within the discretion of the trial court, and we will not interfere with that discretion unless it is abused. [Citation.] An abuse of discretion occurs where no reasonable person could agree with the position taken by the trial court." *People v. Sven*, 365 Ill. App. 3d 226, 241 (2006). We agree with appellate defense counsel that, under the circumstances of this case—including defendant's extensive criminal record and his threatening text messages—the maximum prison term of six years could not be plausibly characterized as unreasonable.

¶ 43                                   E. Motion for Substitution of Judge

¶ 44 On our own, we consider a fifth potential issue, the circuit court's ruling on defendant's *pro se* motion for a substitution of Judge Workman. We assume, merely for the sake of argument, that this motion was cognizable while defendant was represented by an attorney.

¶ 45 Section 114-5(d) of the Code of Criminal Procedure of 1963 provides, "[A]ny defendant may move at any time for substitution of judge for cause, supported by affidavit." 725 ILCS 5/114-5(d) (West 2020). The "cause" that the defendant must prove is that the judge in question "is probably prejudiced" against the defendant. *People v. Mercado*, 244 Ill. App. 3d 1040, 1045 (1993). "[A] determination of prejudice or absence of prejudice will stand unless it is against the manifest weight of the evidence." *Id.* at 1047. This factual determination is against the manifest weight only if the determination is "clearly erroneous" or, in other words, only if "the record commands an opposite conclusion." *Id.* Judge Yoder could reasonably find that, instead of prohibiting Popurella from representing defendant (as defendant claimed), Judge Workman merely refused to continue the trial. The record does not compel the conclusion that such a refusal would have been motivated by prejudice against defendant. Nor does the record compel the conclusion

that Judge Workman lost his impartiality when defendant sued him. It is not uncommon for judges to be sued by disgruntled criminal defendants. If we regarded these typically frivolous lawsuits as disqualifying, all a criminal defendant would have to do to obtain the substitution of a judge is sue the judge. But judges are not so easily dislodged from their disciplined impartiality. As for defendant's claim that Judge Workman reappointed an attorney he had found to be ineffective, that claim was a misconception on two levels: (1) Judge Workman never found the appointed trial counsel ineffective but, instead, merely granted defendant's motion to represent himself and (2) it was not Judge Workman, but rather it was the public defender, who assigned that particular trial counsel to defendant's case. Therefore, we see no potential merit in this additional issue.

¶ 46                                    III. CONCLUSION

¶ 47          For the foregoing reasons, we grant appellate defense counsel's motion to withdraw, and we affirm the circuit court's judgment.

¶ 48          Affirmed.