2020 IL App (1st) 180767 & 181672 (consolidated)-U

SECOND DIVISION
October 27, 2020

Nos. 1-18-0767 & 1-18-1672 (consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 98 CR 29369 (02) |
| v. | ) | |
| | ) | |
| LENZY EUBANKS, | ) | The Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 98 CR 23091 |
| v. | ) | |
| | ) | |
| DEON VIRGIL a/k/a LENZY EUBANKS, | ) | The Honorable |
| | ) | Diane Cannon, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*HELD*: The judgment of the trial court summarily dismissing defendant's *pro se* postconviction petition is reversed and the cause is remanded for second-stage proceedings where, and upon the State's concession, the trial court committed error in sentencing defendant and trial and appellate counsel were ineffective. Additionally, we order that this cause is to be assigned to a different trial judge on remand, as defendant has met his burden of demonstrating prejudice. Finally, we are prohibited from addressing any issues raised in the *Finley* motion filed by the State Appellate Defender and direct that these be again reviewed by counsel on remand.

¶ 1        Defendant-appellant Lenzy Eubanks (defendant)[1] has two appeals pending before this Court, numbers 1-18-0767 and 1-18-1672. In the former, he appeals the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), contending that the circuit court erred in dismissing his petition because he presented arguably meritorious claims that the trial court violated his constitutional rights by improperly relying on another defendant's more serious criminal history to punish defendant and that his rights to effective trial and appellate counsel were violated when neither of these challenged the trial court's error. In the latter, counsel for defendant filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that two of the allegations defendant raised in the same postconviction petition, involving a separate yet tangentially related conviction, have no merit. For the following reasons, and as we will explain in more detail below, we cannot legally consider the two allegations addressed in the *Finley* motion at this time but we reverse the judgment of the trial court summarily dismissing defendant's *pro se* postconviction petition, ultimately remanding this consolidated case for second-stage postconviction proceedings to review all

_____

[1] Defendant is also known to our Court as Deon Virgil, as the caption of the case in case no. 1-18-1672 denotes. However, as the instant cause is a consolidation of case nos. 1-18-1672 and 1-18-0767, we will address defendant as Lenzy Eubanks, since that name is common to both appeals and that is the name under which defendant was convicted in the lower docketed consolidated case number.

of defendant's claims in full and with instructions that the matter be assigned to a different judge.

¶ 2                                                    BACKGROUND

¶ 3        The incredibly unique procedural posture of the instant causes warrants our explanation to make matters clear for the record.

¶ 4        As noted, defendant initially had two separate appeals pending before this Court.  Both appeals are taken from the same circuit court judgment summarily dismissing his single *pro se* postconviction petition.  The Office of the State Appellate Defender represents defendant in both appeals.  And, trial court judge Diane Cannon was the trial judge in both of the underlying matters.

¶ 5                       Defendant's First Case: 98 CR 23091 (The Drug Case)

¶ 6        In July 1998, defendant was 16 years old.  He was charged at that time as an adult with one count of possession of a controlled substance with intent to deliver within 1,000 feet of a school, a Class X felony.  Following a bench trial, defendant was found "guilty as charged" and sentenced to 12 years' imprisonment.  On direct appeal, in a summary order, this Court rejected defendant's claim that his sentence was excessive and affirmed his conviction.  See *People v. Eubanks a/k/a Virgil*, No. 1-01-1442 (2002) (unpublished summary order under Supreme Court Rule 23(c)).[2]  In a lengthy footnote in that order, this Court pointed out that the indictment failed to cite the statutory provision for committing the offense within 1,000 feet of a school.  Consequently, this Court found that, because an indictment must cite the statutory provision alleged to have been violated, defendant could only have been convicted

_____

[2] The appellate panel who decided that matter is not the instant panel.

of possession of a controlled substance with intent to deliver, a Class 1 felony. See *Eubanks*, No. 1-01-1442, n.1.

¶ 7                    Defendant's Second Case: 98 CR 29369 (The Murder Case)

¶ 8     Meanwhile, on October 13, 1998, defendant turned 17 years old. In November 1998, he was charged as an adult with the first-degree murder of Jumar Barnes, who was shot near West Oak Street in Chicago.[3] Evidence presented at trial revealed that defendant was affiliated with the Vice Lords street gang. He and five other members of the Vice Lords, who were in conflict with rival street gang the Gangster Disciples and in retaliation for a prior incident involving members of each, were on the grounds of a school on the evening in question when the victim, a Gangster Disciple, rode his bicycle towards them mistakenly believing they were members of his own gang. During the altercation that subsequently ensued, one of defendant's companions shot the victim in the head and another fired multiple additional shots at the victim. Two occurrence witnesses testified at trial, as did a Chicago police officer, a detective, and forensic personnel. Defendant's custodial statements were also introduced into evidence following the denial of his pretrial motion to suppress. The defense did not present any evidence and, following closing argument, the jury found defendant guilty.

¶ 9     At the sentencing hearing in his murder case, defendant's presentence investigation report (PSI) indicated that he was born on October 13, 1981. His prior criminal history showed that he had a separate, unrelated adult conviction for manufacture or delivery of a controlled substance for which he was sentenced to 12 years in prison, *i.e.*, his conviction in the drug case detailed herein. Also listed were three other arrests, all of which took place in 1998: for

---

[3] The facts involved in defendant's murder case were completely unrelated to the facts involved in his drug case, even though the crimes occurred relatively close to each other in time.

theft, battery and possession of cannabis plants for which he was sentenced to supervision for the plants and the other charges were *nolle prossed*; for criminal trespass to a vehicle for which no disposition was noted; and for disorderly conduct which was stricken off call with leave to reinstate. In addition, the PSI stated that defendant had no juvenile adjudications.

¶ 10    At the conclusion of the sentencing hearing in his murder case, and following the presentation of evidence in aggravation and mitigation, Judge Cannon gave the following colloquy:

"THE COURT: You were a young man when you were arrested for this. You were a young man when you were arrested for your drug case for which you received twelve years. You were out on bond on that case when you picked up this murder. 28 brushes with juvenile authorities starting from 1989 --

THE DEFENDANT: No.

THE COURT: --[are] reflected in your criminal history sheet. Ranging from aggravated criminal sexual assault, aggravated batteries, batteries, batteries, thefts. But more importantly, the facts of this crime, sir.

The sentence of this Court is 30 years in the Illinois Department of Corrections. That is consecutive to or after you completes [*sic*] your twelve [year] sentence, 98-CR-23091 (the drug case)."

Accordingly, Judge Cannon sentenced defendant to an aggregate term of 42 years in prison. Defense counsel did not object at any point during this exchange nor posttrial.

¶ 11    Defendant's cause proceeded to a direct appeal in our Court, whereupon the Office of the Cook County Public Defender filed a motion for leave to withdraw as appellate counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967). Defendant filed a response. Our

Court granted the public defender's motion for leave to withdraw and affirmed the judgment of the trial court. See *People v. Eubanks*, No. 1-01-2654 (2002) (unpublished order under Supreme Court Rule 23).[4]

¶ 12    Later, defendant filed a *pro se* motion to dismiss the indictment against him, arguing that while he was indicted under the Illinois Compiled Statutes, the Illinois Revised Statutes should have been applied to his cause. On January 18, 2007, after considering defendant's motion, Judge Cannon issued a decision stating, "[defendant]'s motion to dismiss his indictment is respectfully denied."

¶ 13    On October 31, 2017, defendant filed a *pro se* postconviction petition. In this single petition, he asserted five claims challenging both his drug conviction and his separate, unrelated murder conviction. Defendant alleged: (1) his trial in the drug case should have been held in juvenile court; (2) his adult sentence in the drug case is void because the State did not request a hearing to transfer him to adult court for sentencing; (3) his aggregate 42-year sentence (30 years for the murder conviction made to run consecutive to the 12 years for the drug conviction) violates the Eight Amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution; (4) the trial court erred at his sentencing on the murder conviction by relying on another defendant's extensive criminal history to impose sentence on defendant; and (5) his trial and appellate counsels were ineffective for failing to raise these claims at trial and on direct appeal.

¶ 14    The record reflects that nowhere in his single postconviction petition did defendant request to amend his prior collateral filing which the trial court had denied on January 18, 2007, wherein he had sought dismissal of his indictment. Nor did the trial court ever

---

[4] Again, the appellate panel who decided that matter is not the instant panel.

recharacterize defendant's motion to dismiss his indictment as a postconviction petition, rendering this petition somehow supplemental in any form to that prior dismissal motion. Yet, on January 24, 2018, as the trial court summarily dismissed defendant's postconviction petition, Judge Cannon stated the following on the record: "Petition to amend post conviction petition, which was denied [o]n January 18th of 2007, is respectfully denied."

¶ 15    Subsequently, on March 21, 2018, defendant submitted a *pro se* late notice of appeal from the dismissal of his postconviction petition. He listed the trial court number for the murder case only, 98 CR 29369. This Court allowed defendant's late notice of appeal on April 19, 2018. It was assigned case number 1-18-0767. The State Appellate Defender was appointed to represent defendant.

¶ 16    Two months later, on May 16, 2018, the State Appellate Defender sent defendant a letter advising him to file a second *pro se* late notice of appeal listing only circuit court number 98 CR 23091, the drug case. On July 19, 2018, defendant did so. As no connection to the murder case could be noted due to the differing trial court numbers, this Court allowed defendant's late notice of appeal on August 13, 2018, and it was assigned a separate, unrelated case number, 1-18-1672. Again, this Court assigned the State Appellate Defender to represent defendant on this appeal.

¶ 17    Procedurally, then, what resulted here was the filing of two separate appeals taken from the same circuit court judgment, entered by Judge Cannon, summarily dismissing defendant's single postconviction petition. The Office of the State Appellate Defender has, in these two appeals, addressed half of the allegations from defendant's singular petition in one appeal (seeking second-stage proceedings via remand related to allegations involved in the murder case), and the other half of his allegations from the same singular petition in the

other appeal (seeking withdrawal via *Pennsylvania v. Finely*, 481 U.S. 552 (1987), related to the allegations involved in the drug case).

¶ 18     After the discovery in our Court that these two simultaneous appeals existed, we, on September 22, 2020, *sua sponte* issued an order consolidating the matters into the instant, single appeal. We examine the issues raised now.

¶ 19                                      ANALYSIS

¶ 20                            I. Appeal No. 1-18-0767

¶ 21     We begin with defendant's appeal dealing with his murder conviction. As we have noted, he currently appeals from the summary dismissal of his *pro se* petition wherein he asserted, relative to this conviction, that he presented arguably meritorious claims that the trial court violated his constitutional rights by improperly relying on another defendant's more serious criminal history to punish defendant.[5] He suggests that perhaps the trial court had mistakenly been reading from someone else's PSI and, at the very least, "considered a total of 22" offenses that defendant had never committed and were not part of his criminal history, including the serious offenses of aggravated criminal sexual assault and aggravated battery. He also notes that the trial court's "most telling evidence of *** error" was stating that he had had "28 brushes with the authorities by 1989," which would mean that, having been born in 1981, he had committed all these crimes by the time he was 8 years old. Asserting prejudicial effect, defendant insists that the court's error could not be said to be insignificant to its reasoning behind the harsh sentence imposed, which was 10 years beyond the 20-year statutory minimum. Additionally, he contends that his rights to effective trial and appellate counsel were violated when neither of these challenged the trial court's error. The

_____

[5] The record of defendant's murder trial reflects that other defendants, namely, other members of his street gang, were tried and sentenced at the same time and in the same courtroom as he was.

State, for its part, wholly concedes this issue and advocates remand for second-stage postconviction proceedings on these same grounds defendant asserts.

¶ 22     Defendant, however, further contends that, upon remand, his cause should be assigned to a different trial judge, as the instant one not only committed error, but also refused to recognize her error and misstated the procedural history of his cause so as not to have to address her error.  It is here where the State disagrees with defendant, and it is here were we concentrate our decision.

¶ 23     We begin with some initial black-letter legal analysis, simply to ensure a complete record here in this case which has had anything but a complete and adequate rendition of its procedural history.  Briefly, where, as here, a postconviction petition does not implicate the death penalty, a trial court adjudicates the petition in three distinct stages.  See *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).  At the first stage, as implicated in the instant cause, the trial court examines the petition taking all well-pled facts and accompanying affidavits as true (see *People v. Peeples*, 205 Ill. 2d 480, 510 (2002)) to determine whether the petition is frivolous or patently without merit (see *Hodges*, 234 Ill. 2d at 10).  We review the trial court's dismissal of a postconviction petition at the first stage *de novo*.  See *Hodges*, 234 Ill. 2d at 9.

¶ 24     A petition seeking postconviction relief for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact.  See *Hodges*, 234 Ill. 2d at 11-12; *People v. Tate*, 2012 IL 112214, ¶¶ 9-12.  A petition has no arguable basis in law when it is premised on "an indisputably meritless legal theory," such as a legal theory that the record contradicts. *Hodges*, 234 Ill. 2d at 16.  A petition has no arguable basis in fact when it is founded on a

"fanciful factual allegation," including factual claims that are "fantastic or delusional" or belied by the record. *Hodges*, 234 Ill. 2d at 16-17; see *People v. Morris*, 236 Ill 2d 345 354 (2010). Under this low standard, a petition need not set forth the constitutional claim in its entirety. See *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006). Rather, limited detail is sufficient if the petition presents the "gist" of a constitutional claim. *Reyes*, 369 Ill. App. 3d at 12. "Substantive questions relating to the issues raised in the petition are not to be addressed at the first stage of the post-conviction proceeding." *People v. Smith*, 326 Ill. App. 3d 831, 839-40 (2001).

¶ 25    First, we wholly agree with defendant, and accept the State's rightful concession, that the trial court erred in summarily dismissing his postconviction petition because he presented arguable claims of both trial court error and ineffective assistance of counsel. His petition must, undeniably, be remanded for second-stage proceedings.

¶ 26    Due process prohibits a trial court from basing a defendant's sentence on inaccurate information. U.S. const., amend. XIV; *Untied States v. Addonizio*, 442 U.S. 178, 187 (1979); *United States v. Tucker*, 404 U.S. 443, 447 (1972); Ill. Const. 1970, art. I, § 2; *People v. Otero*, 263 Ill. App. 3d 282, 284 (1994). An alleged error in this regard implicates a defendant's substantive rights and potentially deprives him of a fair sentencing hearing. Also, a criminal defendant is entitled to the effective assistance of counsel at trial and on direct appeal. U.S. Const., amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); Ill. Const. 1970, art I. § 8; *People v. Makiel*, 358 Ill. App. 3d 102, 105 (2005). To prevail on this claim, a defendant must show that the representation fell below objective standards of reasonableness and there is a reasonable probability that, but for the deficient

performance, the outcome of the proceeding would have been different. See *Strickland*, 466 U.S. at 687; *People v. Hall*, 217 Ill. 2d324, 335 (2005).

¶ 27        In the instant cause, defendant's petition was neither indisputably meritless so as to have no arguable basis in law nor were his factual allegations fanciful so as to have no arguable basis in fact. Rather, both Judge Cannon's error and trial and appellate counsels' ineffectiveness are glaringly obvious in the record before us. That is, in sentencing defendant after his murder trial to 30 years (10 years beyond the minimum sentence available), Judge Cannon clearly relied on a PSI, or some form of documentation, that did not pertain to defendant at all. During her colloquy, she noted that defendant had been convicted of serious criminal offenses including aggravated criminal sexual assault, aggravated batteries, batteries and thefts. She went on to declare that defendant had had "28 brushes with juvenile authorities starting from 1989." However, the record reveals now, just as it indisputably did then, that defendant's PSI showed he was born in 1981 and that, other than a recent drug conviction, he had only been arrested three times: for theft, battery and possession of cannabis plants for which he was sentenced only to supervision for possession of the plants; criminal trespass to a vehicle for which no disposition was noted; and disorderly conduct which was stricken. Thus, his PSI never showed he had been involved in any of the crimes upon which Judge Cannon explicitly relied in sentencing him. More conspicuously, Judge Cannon, upon ignoring defendant's own denouncement of these "facts" as he stood before her, continued with a commentary that essentially labeled him, not only falsely but also quite irrationally, a career criminal with 28 brushes with authorities that graduated from thefts to violent crimes like aggravated criminal sexual assault--all before the ripe old age of 8 years old.

11

¶ 28 Additionally, not only did trial counsel, who presumably had been armed long before the sentencing hearing with the correct PSI, stand silently by as defendant tried to interrupt the trial court to point out these errors, but trial counsel also otherwise failed to challenge Judge Cannon's error in any meaningful way either there at the hearing or later in posttrial proceedings. And, to compound this blunder even further, appellate counsel similarly put its ineffectiveness on full display when, instead of arguing the merits of defendant's case as they related to his due process right of accurate sentencing by the trial court and trial counsel's ineffectiveness for failing to object, counsel instead filed a motion to withdraw pursuant to *Anders* which, sadly and most unfortunately, was granted.

¶ 29 After construing all well-pled facts in his petition as true, we agree with the parties that defendant stated arguable claims of trial court error and ineffective assistance of trial and appellate counsels. Accordingly, we reverse the trial court's judgment summarily dismissing his *pro se* postconviction petition and remand for second-stage postconviction proceedings under the Act.

¶ 30 This, however, does not end our query, but resolves only the question of remand. Upon that remand, defendant aptly requests, and the State vehemently opposes, that his cause be assigned to a different trial judge.

¶ 31 Clearly, in a postconviction proceeding, a defendant does not have an absolute right to a substitution of judge. See *People v. Harvey*, 379 Ill. App. 3d 518, 522 (2008). Rather, the judge who presided over his criminal trial should be the judge to hear his postconviction petition. See *Harvey*, 379 Ill. App. 3d at 522. A trial judge's impartiality is presumed and her rulings, alone, almost never provide a valid basis for a claim of judicial bias or partiality. See *People v. Burnett*, 2016 IL App. (1st) 141033, ¶ 56.

¶ 32     However, although the decision to disqualify a judge because of prejudice is not one to be made lightly (see *Reyes*, 369 Ill. App. 3d at 25; accord *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 14), if substantial prejudice can be shown, we may very well order that trial judge be substituted (see *Harvey*, 379 Ill. App. 3d at 522). The burden, of course, lies with the party claiming prejudice, or defendant here. See *Reyes*, 369 Ill. App. 3d at 25; accord *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 14. An order remanding a case to a different judge requires defendant to show " 'something more' " than simply that the judge presided over his trial earlier. *People v. Reyes*, 369 Ill. App. 3d 1, 25 (2006) (quoting *People v. Vance*, 76 Ill. 2d 171, 181 (1979). That "something more" may be established via a showing of " 'animosity, hostility, ill will, or distrust,' " or " 'prejudice, predilections or arbitrariness.' " *Reyes*, 369 Ill. App. 3d at 25 (quoting *Vance*, 76 Ill. 2d at 181). Additionally, the presumption of the trial judge's impartiality may also be rebutted where the record affirmatively demonstrates the contrary. See *Cunningham*, 2012 IL App (3d) 100013, ¶ 14; accord *Burnett*, 2016 IL App (1st) 141033. ¶ 56 (such evidence can consist of prejudicial trial conduct and/or evidence of the judge's personal bias which can stem from an extrajudicial source, along with a judge's remarks that reveal a high degree of favoritism or antagonism so as to make fair judgment impossible).

¶ 33     Based on our review of the record, and our conclusion that not only did Judge Cannon commit error but also refused to recognize her error and misstated the procedural history of defendant's cause so as not to have to address her error, we find defendant has met his burden here and wholly agree with him that, upon remand for second-stage postconviction proceedings, his cause should be remanded to a different trial judge.

¶ 34    Judge Cannon did not simply make a single, off-handed mistake, as the State argues here. Rather, she compounded what perhaps was a minor first misstep into something more egregious when she failed to review her own error. That is, initially, at defendant's sentencing hearing on his murder case, his PSI clearly indicated he was born in 1981, he had no juvenile adjudications, he was convicted of the only the drug case, and three other arrests were minor and had all been, essentially, dropped. However, in her colloquy, and as the foundation for the lengthy sentence she imposed, Judge Cannon repeatedly referred to a PSI that was not defendant's. That PSI upon which she relied, and which she detailed at length, named some 28 convictions, including juvenile ones, and named crimes that were considerably violent, such as aggravated batteries and aggravated criminal sexual assault—crimes, again, of which defendant was never convicted. Most ironically, and despite defendant's immediate and vocal protest (*sans* any assistance of trial counsel), even though his birthdate was clear on his PSI and even thought he was physically present before her, if Judge Cannon were to be believed, these 28 crimes would have made defendant a career criminal—all by the age of 8 years old.

¶ 35    Obviously, we understand that mistakes are made, and this is true for every courtroom around the country. If this were all that happened here, our review may be different. Yet, this is not where the errors in this matter ended.

¶ 36    After defendant failed to obtain any relief on direct appeal, he filed a *pro se* motion to dismiss the indictment against him. Judge Cannon considered his motion and denied it on January 18, 2007, specifically acknowledging at the conclusion of her decision, and correctly so, that this was "[defendant]'s motion to dismiss his indictment." Subsequently, in 2017, defendant filed the *pro se* postconviction petition at issue which, of course, went before

14

Judge Cannon. Nowhere in his petition did defendant request to "amend" his motion to dismiss indictment, which Judge Cannon had dismissed a decade prior. Nor, at any point during the proceedings involving his postconviction petition, did Judge Cannon ever recharacterize defendant's prior motion to dismiss his indictment as a postconviction petition, which would have reclassified this 2017 postconviction petition somehow supplemental in form or nature to some prior postconviction petition. Indeed, the parties are in agreement, and the record is clear, that defendant filed only one postconviction petition—in 2017. However, and inexplicably in light of the record and transcripts, Judge Cannon summarily denied defendant's postconviction petition by specifically stating that his petition was a "[p]etition to amend post conviction petition, which was denied [o]n January 18th of 2007."

¶ 37       Judge Cannon's summary declaration was clearly wrong and a flat mischaracterization of the procedural posture of defendant's case before her. In no way was defendant's *pro se* postconviction petition a "petition to amend [his] post conviction petition" from 2007. Again, the record makes clear that defendant's filing which was denied by Judge Cannon on January 18, 2007 was a motion by defendant to dismiss his indictment. Therein, he argued that while he was indicted under the Illinois Compiled Statutes, the Illinois Revised Statutes should have been applied to his cause. The term "postconviction" was never mentioned nor even alluded to, and the claim defendant presented in that motion was completely separate and distinct from any of the five claims he would subsequently raise, over a decade later, in his postconviction petition of 2017, properly filed pursuant to the Act. The record also makes clear that Judge Cannon knew all this, as she herself acknowledged at the time she denied defendant's motion to dismiss indictment that that was what defendant had filed and that was what she denied.

15

¶ 38        Misnomers are oftentimes minor mistakes, but here, and in this particular legal context, Judge Cannon's error had a greater significance.  When defendant returned before her in 2017 with his postconviction petition, and when she declared that this petition was not an original postconviction petition but, rather, a supplemental filing seeking to amend defendant's "prior postconviction petition" which she had already "denied" back in January 2007, Judge Cannon effectively made it so that she did not have to address defendant's claims in his postconviction petition—the five claims he made, one of which directly pointed out her grave error of relying on another defendant's PSI in sentencing defendant as she did.  In other words, with her misstatement of the procedural posture of defendant's cause, she was able to dismiss defendant's postconviction petition as a supplemental filing rather than review the merits of his claims, as she should have and which went unreviewed.

¶ 39        This leaves us, then, with a situation where Judge Cannon avoided confronting her very own sentencing error by misstating not only the nature of defendant's pleading before her, but also his cause's procedural history.  While we cannot say this was intentional or malicious, the record remains clear that Judge Cannon refused to face her own error.  She knew, at points throughout this case's history, that defendant's 2017 filing was not a supplemental petition but, instead, that defendant filed, first, a motion to dismiss indictment, and later, a postconviction petition.  She confounded the two.  Deliberately or not, the result was the same—Judge Cannon refused to address the merits of claims raised by defendant that called into question whether she, herself, made a serious mistake when she sentenced him.  And, because a critical point in defendant's petition focuses on Judge Cannon's undeniable sentencing error, at the very least, a viable appearance of prejudice and impropriety has been raised by defendant and calls into question whether she would be able to fairly adjudicate

16

now, upon remand for second-stage postconviction proceedings, defendant's claims. Defendant has met his burden here.

¶ 40        Accordingly, we instruct that, on remand, this matter be assigned to a different judge.

¶ 41                                II. Appeal No. 1-18-1672

¶ 42        We have already described the procedural posture of defendant's second appeal involving his drug case, which we have now consolidated herein. Briefly, while a minor, defendant was convicted on drug charges and sentenced to 12 years in prison. He appealed, claiming his sentence was excessive, and this Court rejected his contention and affirmed his conviction. Following his conviction and sentencing on the murder case, that sentence was made consecutive to the sentence he received in the drug case, resulting in an aggregate 42-year term of imprisonment. When defendant filed his *pro se* postconviction petition in 2017, he raised allegations challenging both his drug conviction and his unrelated murder conviction and, as we know, his petition was summarily dismissed.

¶ 43        Defendant then filed a *pro se* late notice of appeal from the dismissal of his postconviction petition, but he listed only the circuit court number for his murder case, eventually assigned appellate no. 1-18-0767. Two months later, however, the State Appellate Defender advised him to file a second, and separate, *pro se* late notice of appeal listing only the circuit court number for his drug case, and that eventually was assigned appellate no. 1-18-1672. In this latter appeal, and after specifically advising him to file it, the State Appellate Defender went ahead and filed a motion to withdraw pursuant to *Finley*. In that motion, the State Appellate Defender first stated that defendant's allegation that he was erroneously tried and sentenced in adult court rather than juvenile court for the drug case lacked arguable merit, but then stated that there were two other arguably meritorious

17

sentencing claims in his petition pending in his other appeal that were not addressed in the *Finley* motion. Yet, that office, trusted to represent defendant, did nothing more.

¶ 44    The problem here, and the root of the ultimate mistake in the entire procedural posture of these cases is this: partial summary dismissals within the context of postconviction proceedings under the Act are prohibited. See *People v. Rivera*, 198 Ill. 2d 364, 370-74 (2001). In other words, a postconviction petition reviewed at first stage must be either dismissed in its entirety or docketed for second-stage proceedings in its entirety. See *Rivera*, 198 Ill. 2d at 370-74. The Act does not allow for partial summary dismissals at the first stage of postconviction proceedings because this would result in "piecemeal appellate litigation." *People v. Rivera*, 198 Ill. 2d at 370-74. This is precisely what has occurred in the instant cause and this is precisely what we cannot allow.

¶ 45    Perhaps the Office of the State Appellate Defender was/is not cognizant of *Rivera* and its important holding. We sincerely hope this is true, as the alternative, at least in this case, would be, at best, embarrassing, and at worst, tantamount to legal malpractice, namely, telling a defendant to file a motion in his case (a late notice of appeal) which essentially gave that office a platform to then withdraw from further representing him. Either way, that office, as well as the Office of the Cook County Public Defender, for that matter, should know the meaning of *Rivera*. And both offices are on notice that the representation defendant received in these matters, since the age of 16—everything that occurred from the instance where his public defender failed to support him at his sentencing hearing as he explicitly tried to point out Judge Cannon's error to her, to that counsel's failure to file any posttrial motion regarding the obvious and significant mistake, to that office withdrawing on an *Anders* motion, to the State Appellate Defender mistakenly telling defendant to file a

18

separate notice of appeal on the same postconviction petition, and to that office then moving to withdraw its representation of him via *Finley*—has been professionally and incredibly subpar and has not gone unnoticed by this Court.

¶ 46     In sum, as we have determined, and as the State has already conceded, that defendant's petition must be remanded for second-stage proceedings due to Judge Cannon's error with his PSI while imposing sentence on the murder charge and due to trial and appellate counsels' ineffectiveness in this regard, defendant's postconviction petition must be remanded *in its entirety*—encompassing *all* the allegations he has raised spanning both his drug case *and* his murder case. Additionally, pursuant to *Rivera*, we cannot consider the two allegations addressed in the *Finley* motion separate from the other allegations in defendant's petition. On remand, counsel will be appointed to represent defendant, and it will be counsel's responsibility to assess *all* the allegations raised in defendant's *pro se* petition, which we recommend it does—and does extremely carefully--in light of all that has occurred here.[6]

¶ 47                                    CONCLUSION

¶ 48     Ultimately, we hold that, while we cannot legally consider the two allegations addressed in the *Finley* motion at this time, we reverse the judgment of the trial court summarily dismissing defendant's *pro se* postconviction petition and remand this newly consolidated cause for second-stage postconviction proceedings to review all of defendant's claims in full and with instructions that the matter be assigned to a different judge.

---

[6] We note for the record that in appeal no. 18-0767, defendant filed a supplemental opening appellate brief, arguing, in addition to the arguments presented in his original opening brief, that his postconviction petition alleged the meritorious claim that his rights under the Eighth Amendment and the Illinois Constitution's proportionate penalties clause were violated when the trial court imposed a *de facto* life sentence of an aggregate of 42 years (12 years for the drug case and 30 years for the murder case) without a finding that he, as a minor at the time of the offense, was beyond the possibility of rehabilitation. Again, this would be another matter for appointed counsel on remand to seriously consider, as we cannot do so at this time.

¶ 49   Reversed and remanded with directions.