(No. 50675.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JEFFREY VANCE, Appellee.

*Opinion filed May 24, 1979.*

William J. Scott, Attorney General, of Springfield, and Ronald C. Dozier, State's Attorney, of Bloomington (Donald B. Mackay, Melbourne A. Noel, Jr., and Timothy B. Newitt, Assistant Attorneys General, of Chicago, and James E. Hinterlong and John X. Breslin, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Marc Barnett, Marvin J. Glass, and Charles K. Piet, of Barnett, Ettinger, Glass, Berkson & Braverman, Ltd., of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On December 4, 1974, an indictment was returned in the circuit court of McLean County charging Jeffrey M. Vance, defendant herein, with the unlawful delivery of less than 30 grams of lysergic acid diethylamide (LSD). Following allowance, in January 1975, of defendant's motion for substitution of judges because of the alleged prejudice of the original trial judge, the case was assigned to Judge Luther H. Dearborn. Thereafter various motions, including the substitution of counsel for defendant, were allowed, and, following a number of continuances of prior trial settings, the case came on for trial on July 22, 1976. On that morning defense counsel presented a motion under section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(c)). This motion alleged the prejudice of Judge Dearborn and requested trial before a different judge.

It was further alleged that Judge Dearborn had presided at an earlier trial of defendant on an unrelated drug-delivery charge in which defendant had been sen-

tenced to the penitentiary, and which was then on appeal. Defendant's conviction in that case was subsequently affirmed by the appellate court in 1977, but the sentence was reversed and the cause remanded for resentencing by a different judge. (People v. Vance reported *sub. nom. People v. Honn* (1977), 47 Ill. App. 3d 378.) The sentence reversal in that case was said by the appellate court to be necessitated by what it characterized as Judge Dearborn's overwhelming concern "with the severe societal problem caused by the use and transfer of drugs and not with the particular circumstances presented in these individual cases." (47 Ill. App. 3d 378, 385.) The motion further alleged that the judge was prejudiced against him, and that defendant belonged to a class of defendants particularly disfavored by Judge Dearborn, who, it was alleged, had never, in the absence of a plea agreement, sentenced a defendant convicted of possession or delivery of a controlled substance to other than a penitentiary term. It is further alleged that in the earlier trial Judge Dearborn had questioned defendant's honesty.

The motion for substitution of judges was denied. Since defendant had, more than a year earlier, and after Judge Dearborn's assignment to his case, waived a jury trial, a bench trial ensued in which defendant was found guilty and sentenced to 22 to 66 months' imprisonment, to be served concurrently with the case then on appeal.

In a Rule 23 order (58 Ill. 2d R. 23.), a divided appellate court held the motion for substitution should have been allowed. (56 Ill. App. 3d 1122.) It reversed the conviction, stating that while "the mere fact of a defendant's prior conviction before a certain judge is not necessarily cause for recusal in a later case," the trial judge here "was shown to have a particular prejudice against defendants in drug delivery cases and was shown to have

abused his sentencing discretion on a prior drug conviction of this very defendant. Those circumstances warrant substitution for cause." The dissenting member was of the opinion that no prejudice on the issue of guilt or innocence had been shown, and that it was unnecessary to remand for a new trial.

The fundamental problem with the appellate court majority's disposition of this case is its remandment for a new trial. The appellate court in the earlier case apparently did not regard what it characterized as Judge Dearborn's serious abuse of sentencing discretion in a category of cases he "disfavored" (*People v. Pinchott* (1977), 55 Ill. App. 3d 593, 598) as inhibiting his ability to fairly determine defendant's guilt, for it affirmed defendant's conviction, remanding only for resentencing. Now, however, the appellate court majority seemingly concludes that the trial judge could not fairly determine defendant's guilt or innocence in this case.

As earlier noted, defendant's motion for substitution was predicated upon section 114—5(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5(c)), which provides:

> "(c) In addition to the provisions of subsections (a) and (b) of this Section any defendant may move at any time for substitution of judge for cause, supported by affidavit. Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion."

When asked by the judge whether he desired to introduce evidence in support of the motion, defense counsel offered only a transcript of the earlier trial, referred to Judge Dearborn's imprisonment of drug offenders, the absence of aggravation in the earlier case, and the judge's denial of a stay of mittimus or bond pending appeal as indicative of prejudice against this class of offenders and against

defendant himself.

We digress momentarily to comment upon the fact that defendant voluntarily elected to waive a jury trial shortly after the case was assigned to Judge Dearborn more than a year earlier. It seems odd that defendant would choose to have his guilt or innocence determined by a judge who, defendant now asserts, was then manifesting a prejudice against all persons charged with drug-related offenses. Additionally, it seems to us that the motives for delaying, until the morning of trial, presentation of a motion to disqualify a judge assigned to the case more than a year earlier might well be suspect, particularly when, as here, the grounds alleged for disqualification are not newly discovered. Since the motion was not objected to on these grounds, however, we consider its merit.

It is clear that ordinarily the fact that a judge has ruled adversely to a defendant in either a civil or a criminal case does not disqualify that judge from sitting in subsequent civil or criminal cases in which the same person is a party. (Annot., 21 A.L.R.3d 1369 (1968); 48 C.J.S. *Judges* sec. 82 (1947); *People v. Jones* (1971), 48 Ill. 2d 410, 413; *Merkie v. People* (1959), 15 Ill. 2d 539, 546; *People v. Pinchott* (1977), 55 Ill. App. 3d 601, 602.) The appellate court has repeatedly indicated that the burden of establishing actual prejudice rests on the defendant, and the trial court need not justify retaining the case (*People v. Nickols* (1976), 41 Ill. App. 3d 974, 979, and cases there cited), and this court has said that the trial judge is ordinarily in the best position to determine whether he has been prejudiced (*People v. Polk* (1973), 55 Ill. 2d 327, 336). The lack of unanimity among the Fourth District Appellate Court judges on the disqualification question is highlighted by the fact that while a divided court in this case reversed because Judge Dearborn did not allow the motion for substitution of judges, a differently composed

but also divided panel affirmed a conviction involving his denial of a similar motion in *People v. Pinchott* (1977), 55 Ill. App. 3d 601.

To conclude that a judge is disqualified because of prejudice is not, of course, a judgment to be lightly made. It will be viewed by some as reflecting unfavorably upon the judge, and it tends to disrupt the orderly functioning of the judicial system. (*United States v. Valenti* (D.N.J. 1954), 120 F. Supp. 80.) As was said in *Cox v. United States* (8th Cir. 1962), 309 F.2d 614, 619, quoting from *In re J. P. Linahan, Inc.* (2d Cir. 1943), 138 F.2d 650:

> "The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal, creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are prejudices."

Every human is, consciously or subconsciously, partial to some degree in that he is influenced by the habits he has been trained in, the experiences he has had, occupationally or otherwise, the people with whom he associates, the area in which he lives and the innumerable unrecognized factors which subconsciously affect every individual's philosophy. As Cardozo said: "Deep below consciousness are other forces, the likes and dislikes, the predilections and the prejudices, the complex of instincts and emotions and habits and convictions, which make the man, whether he be litigant or judge." (B. Cardozo, The Nature of the Judicial Process 167 (1921).) This, however, is nothing more nor less than one of the characteristics of human nature. The most that ought to be expected is that the judge will recognize that he has basic predilections and make a conscientious effort to set them aside and give dispassionate consideration to the case before him. More

than that can scarcely be expected of any individual.

We note that the trial judge here explained at some length his reasoning in denying the motion.

> "THE COURT: Well, with regard to the Defendant specifically, it is correct that there was a previous trial conducted by this Court involving the Defendant in this case and in which there was a conviction and which resulted in the Defendant being sentenced. From that particular circumstance, however, the Court would indicate at this time insofar as the Court is concerned that previous matter has no bearing whatsoever on this particular incident that is scheduled for trial today.
>
> The Court has no opinion as to the guilt or innocence of the Defendant with respect to the charge that is scheduled for trial today. The Court feels that the matters referred to by Defense Counsel in the transcript do not support the allegation of this Motion presented today contained in paragraph 3(f), and that there in fact was no indication by the Court in the previous proceeding that the Court questioned the Petitioner's honesty.
>
> The Court has no acquaintanceship with the Defendant, other than by virtue of Court proceedings. The Court has no knowledge of the facts or evidence with respect to this case, 74 CF 689. And the Court feels that it can be said that the Court harbors no prejudice or feeling of ill will against the Defendant because of the previous case or for any other reason.
>
> With respect to the general allegations contained in paragraph 3 of the Motion, the Court assumes that the conclusions in sub-paragraphs (b) and (c) of paragraph 3 are derived from what is set out in paragraph (d) of paragraph 3. Paragraph (d), the Court might indicate first, is inaccurate, and further the Court harbors no prejudice or ill will against this Defendant or against any class of Defendants charged with any particular offense.
>
> In considering this matter as objectively as I feel I can, it is my personal belief that the Defendant can and would receive a fair trial and the evidence would be judged fairly and without regard to any previous case of the Defendant or without regard to any of the conclu-

> sions or opinions set out in the Motion for Substitution. That would be the Court's feeling that the Motion for Substitution of Judge should appropriately be denied and is denied."

The fact that a judge believes the evidence in a case establishes the guilt of a defendant beyond a reasonable doubt and so holds is, of course, no indication that the judge is prejudiced against that defendant. Nor is the denial of probation and imposition of a sentence of imprisonment to be interpreted as indicative of personal prejudice against a specific defendant such as would disqualify the sentencing judge from determining that defendant's guilt or innocence in a later case. To hold otherwise would unnecessarily complicate the trial of remanded cases and recidivists, for a judge would be limited to a single trial of defendants convicted before him. *King v. State* (1965), 216 Tenn. 215, 391 S.W.2d 637.

Something more than presiding at an earlier conviction and the subsequent denial of probation, or even that probation is usually denied in such cases, is necessary before a judge may be considered disqualified from hearing subsequent cases involving the same defendant. The frequent denial of probation in a particular type of case is no greater proof of prejudice against an individual than is the frequent grant of probation in such cases proof of prejudice against the State. Reviewing court judges should be chary of condemning as motivated by prejudice those actions of trial judges which may represent only a difference of opinion as to the seriousness of a particular offense in the context of community conditions. (*Craven v. United States* (1st Cir. 1927), 22 F.2d 605.) It is that "something more"—a showing of animosity, hostility, ill will, or distrust towards this defendant—which is lacking here. In its absence the proof falls short of establishing the

actual prejudice which would interfere with a fair determination of defendant's guilt or innocence. (See cases collected in *United States v. Valenti* (D.N.J. 1954), 120 F. Supp. 80; *Knapp v. Kinsey* (6th Cir. 1956), 232 F.2d 458, 466; *United States v. Baker* (M.D. Tenn. 1977), 441 F. Supp. 612, 616; *Andrews, Mosburg, Davis, Elam, Legg & Bixter, Inc. v. General Insurance Co. of America* (W.D. Okla. 1976), 418 F. Supp. 304, 306-07; *Duplan Corp. v. Deering Milliken, Inc.* (D. S.C. 1975), 400 F. Supp. 497, 516; *United States v. Nehas* (W.D. Penn. 1973), 368 F. Supp. 435, 437; *United States ex rel. Rogers v. Richmond* (D. Conn. 1958), 178 F. Supp. 44, 46; *United States v. Gilboy* (M.D. Penn. 1958), 162 F. Supp. 384, 393-94.) There are cases reaching a different result, illustrative of which is *United States v. Thompson* (3d Cir. 1973), 483 F.2d 527.

While we have no difficulty in concluding that Judge Dearborn was not disqualified from determining defendant's guilt or innocence, a more troublesome question is presented as to whether the sentence should stand, a question upon which we should pass even though the cause must be remanded to the appellate court. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 153-54, this court reviewed numerous decisions and reemphasized our frequent observation that trial judges are normally better situated than courts of review to determine appropriate punishment, and that "the trial judge's decisions in regard to sentencing are entitled to great deference and weight." While application of that rationale and affirmance of the trial court's sentence would be consistent with *People v. Pinchott* (1977), 55 Ill. App. 3d 601, in which we denied leave to appeal, and *People v. Ward* (1977), 49 Ill. App. 3d 780, leave to appeal was also denied by us in the earlier *Honn* cases, a fact apparently relied upon by those appellate court judges who continued to remand for

resentencing those drug cases in which sentence was imposed by Judge Dearborn. (See *People v. Pinchott* (1977), 55 Ill. App. 3d 593, 598.) Our denials of leave to appeal, of course, carry no connotation of approval or disapproval of the appellate court action, and signify only that four members of this court, for reasons satisfactory to them, have not voted to grant leave. The fact is, however, that in view of the finality of the appellate court judgments in the earlier cases, it would be anomalous for us to now sustain the sentence in this case.

Because it held the recusal motion should have been allowed, the appellate court did not consider other alleged errors. We accordingly reverse the judgment of the appellate court and remand the cause to that court for the consideration of those alleged errors. In the event of affirmance of the guilty judgment, the cause shall be remanded to the circuit court of McLean County with directions that defendant be resentenced by a different judge.

*Reversed and remanded,*
*with directions.*