**UNITED STATES of America ex rel. Phyllis FALCONER, Petitioner,**

v.

**Michael P. LANE and Neil F. Hartigan, Respondents.**

No. 88 C 10308.

United States District Court, N.D. Illinois, E.D.

March 7, 1989.

Louis B. Garippo, Susan G. Feibus, Louis B. Garippo, Ltd., Chicago, Ill., David Lowe, St. Charles, Ill., for petitioner.

Terence Madsen, Asst. Atty. Gen., Criminal Appeals Div., Kenneth A. Fedinets, Office of the Illinois Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner Phyllis Falconer seeks a writ of habeas corpus from this court on the grounds that her murder conviction was infected by fundamentally unfair jury instructions regarding the proper allocation of the burden of proof on the lesser included offense of voluntary manslaughter. Her attorneys have filed a well-reasoned and well-written brief in support of her petition. Unfortunately, they have presented the brief, as well as the petition, to the wrong court. For this reason alone, the petition for habeas corpus must be dismissed.

## BACKGROUND

On May 26, 1986, petitioner stabbed her husband to death. She was subsequently charged with and tried for murder. As a defense, she produced evidence indicating that her husband had mistreated her for a long period of time prior to the fatal stabbing, and the jury was instructed on the offenses of murder and manslaughter, as well as on the justification of self-defense. The jury found her guilty of murder.

On direct appeal, petitioner argued that "(1) she was not proved guilty beyond a reasonable doubt because the evidence established self-defense; (2) the murder conviction should be reduced to voluntary manslaughter; (3) the prosecutor made improper closing arguments; and (4) she was denied effective assistance of counsel." *People v. Falconer*, 168 Ill.App.3d 618, 119 Ill.Dec. 241, 522 N.E.2d 903 (1988). The appellate court affirmed the conviction. *Id.*

Petitioner subsequently filed a petition for leave to appeal with the Illinois Supreme Court, raising the same issues it had asserted on direct appeal. Before the Court ruled on her case, however, it issued its opinion in *People v. Reddick*, 123 Ill.2d 184, 122 Ill.Dec. 1, 526 N.E.2d 141 (1988). In that case, the Court held that the same pattern jury instructions on murder and voluntary manslaughter that had been given in petitioner's case were improper when given together:

> The voluntary manslaughter instructions indicate that to obtain a voluntary manslaughter conviction the People must prove the existence of one of the alternative mitigating mental conditions which the people contend did not exist. By contrast, the murder instruction makes no mention of the mitigating mental conditions. These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter. The reason is that even if a mental state is proved, it will have been proved by the defendant, not the People.

*Id.* at 194–95, 122 Ill.Dec. 1, 526 N.E.2d 141. The Court then held that, although one of the appellants in that case had not objected to the instructions in the trial court, reversal of his conviction was appropriate because the instructions constituted "grave error." *Id.* at 198–99, 122 Ill.Dec. 1, 526 N.E.2d 141.

After learning of this ruling, petitioner filed a supplement to her petition for leave to appeal with the Illinois Supreme Court, arguing that the *Reddick* opinion established both that the trial court had erred in giving the murder and manslaughter instructions during petitioner's trial and that petitioner's failure to object to the instructions at trial did not bar her from raising the issue on appeal. The Supreme Court denied the petition for leave to appeal without an opinion. Petitioner then brought a habeas petition in this court, arguing as the sole ground for relief that the combination of the murder and manslaughter instructions given at her trial violated her Fourteenth Amendment right to due process of law.

Respondents have moved to dismiss on three grounds. They first argue that petitioner has failed to exhaust her state court remedies by bringing this petition before seeking relief in Illinois courts under the Illinois Post–Conviction Hearing Act, ch. 38, ¶¶ 122–1 et seq. They then argue that petitioner waived her objection to the jury instructions by not objecting to them dur-

ing her trial. Finally, they argue that petitioner is procedurally barred from bringing a habeas petition in federal court because her supplemental brief to the Illinois Supreme Court did not frame the objections to the instructions as violations of federal constitutional rights. Because this court finds that the petition must be dismissed on exhaustion grounds, it need not and will not address the latter two arguments.

## DISCUSSION

The exhaustion requirement in federal habeas cases has judicial as well as statutory underpinnings. First enunciated in *Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886), Congress codified the doctrine in 1948 as part of the federal habeas statute, 28 U.S.C. § 2254, and the Supreme Court has further refined it since, *see, e.g., Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

The statute is phrased in rather strict terms, generally prohibiting federal courts from issuing writs of habeas corpus unless and until "the applicant has exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b), and further providing that an applicant shall not be deemed to have done so "if he has the right under the law of the State to raise, by any available procedure, the question presented." § 28 U.S.C. § 2254(c). The Supreme Court, however, has held that once a petitioner has "fairly presented" an issue to the state courts on direct review, the petitioner need not seek recourse through state collateral proceedings in order to satisfy the exhaustion requirement, even if such collateral avenues are available. *Smith v. Digmon*, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). The reason for the rule is that, once the state courts have had the opportunity to rule on a particular issue, it is extremely unlikely that they will reverse themselves and rule differently in subsequent proceedings.

Very recently, the Supreme Court was called upon to determine whether a habeas petitioner has "fairly presented" an issue on direct appeal, and therefore has satisfied the exhaustion requirement, when he raises an issue for the first time in a discretionary appeal to a state's highest court but the court declines to hear the case. *Castille v. Peoples*, —— U.S. ——, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). The Supreme Court held that "[r]aising the claim in such a fashion does not, for the relevant purposes, constitute 'fair presentation.'" *Id.* at ——, 109 S.Ct. at 1060. Although the pertinent facts in this case are nearly identical to those in *Peoples*, the holding in that case does not necessarily control the outcome in this one, for two reasons.

First, the Supreme Court specifically noted that "[t]he requisite exhaustion may nonetheless exist ... if it is clear that respondent's claims are now procedurally barred under [state] law." *Id.* That is, if state law establishes that the petitioner's failure to raise the issue until his appeal to the state's highest court constitutes a waiver of that issue in collateral proceedings, then the petitioner need not return to state court for a futile collateral attack before filing for federal habeas relief. *See Perry v. Fairman*, 702 F.2d 119, 130–21 (7th Cir. 1983).

In this case, however, that avenue to exhaustion is foreclosed. The Illinois Supreme Court expressly held in *Reddick* that the error in the jury instructions at issue here constitutes "grave error" and therefore that the failure to raise it does not constitute a waiver of the issue on appeal. And, recently, an Illinois Appellate Court held that an individual whose conviction for murder was already final when *Reddick* issued could contest these jury instructions on collateral attack despite his having failed to object to them at trial or on direct review. *People v. Flowers*, —— Ill.App.3d ——, —— Ill.Dec. ——, —— N.E.2d —— (November 21, 1988). Thus, it is clear that petitioner is not barred from bringing a collateral attack on this issue in Illinois post-conviction proceedings.

The other reason that the Supreme Court's ruling in *Peoples* does not necessarily render the petition here premature

lies in the Seventh Circuit's reading of the Illinois post-conviction statute as "an 'ineffective remedy' in circumstances where the Illinois courts strictly apply the doctrine of res judicata or waiver in post-conviction motions." *Gray v. Greer*, 707 F.2d 965, 67 (7th Cir.1983) (quoting *United States ex rel. Williams v. Brantley*, 502 F.2d 1383 (7th Cir.1974)). Because Illinois courts almost invariably find barred "all issues actually decided by [the reviewing court on direct appeal] and all issues which could have been presented to that court," *People v. James*, 46 Ill.2d 71, 263 N.E.2d 5 (1970), the Seventh Circuit has held that "[a] petitioner need not pursue a petition for post-conviction relief in order to exhaust a constitutional claim where there is not direct precedent indicating that the Illinois courts will relax the waiver rule." *Gray*, 707 F.2d at 968.

*Reddick* and *Flowers* provide direct precedent for the position that petitioner's challenge to her conviction would not be deemed waived in post-conviction proceedings. Yet, those two cases differ from this one inasmuch as the *Reddick* defendant had his appeal heard on direct review, and the *Flowers* petitioner raised the issue for the first time in collateral proceedings, whereas here petitioner sought relief on this issue with the Illinois Supreme Court on direct review but her petition to appeal was denied. *See also People v. Ikerd*, 47 Ill.2d 211, 265 N.E.2d 120 (1970) (res judicata did not bar post-conviction attack based on issue rejected on direct appeal where subsequent United States Supreme Court ruling changed the law in effect at the time of petitioner's trial and direct appeal); *People v. Cowherd*, 114 Ill.App.3d 894, 70 Ill. Dec. 460, 449 N.E.2d 589 (1983) (same where change of law was effected by Illinois Supreme Court). Thus, it is still possible that Illinois post-conviction courts would apply the doctrine of res juricata to hold that petitioner is barred from obtaining relief in collateral proceedings. Absent direct precedent that the Illinois courts would not apply the res judicata doctrine in this fashion, *Gray* would appear to mandate that this court find petitioner's claim

exhausted and accept the petition.

Yet, while this court could find no cases on all fours with this one, Illinois statutes and cases clearly establish that res judicata will not preclude petitioner from obtaining post-conviction relief. Under Illinois law, "whether ... a petition [for leave to appeal to the Illinois Supreme Court] will be granted is a matter of sound judicial discretion." Ill.Rev.Stat. ch. 110A ¶ 315. The Illinois Supreme Court has definitively held that the denial of leave to appeal is not a decision on the merits. *People v. Vance*, 76 Ill.2d 171, 183, 28 Ill.Dec. 508, 390 N.E. 2d 867 (1979). Thus, although petitioner's conviction became final for res judicata purposes when the Illinois Supreme Court denied the petition for leave to appeal, the denial did not amount to a ruling on the merits of petitioner's *Reddick* claim. Since no other court has ruled on the merits of this claim, the issue does not fall within the "actually decided" prong of the Illinois res judicata doctrine. *See People v. Patton*, 122 Ill.App.3d 46, 77 Ill.Dec. 547, 460 N.E. 2d 851 (1984) (petitioner not barred from raising claim in post-conviction proceedings that he had raised for the first time in petition for leave to appeal to the Illinois Supreme Court where United States Supreme Court had effected a change in the law while his case was on direct appeal and the Illinois Supreme Court denied his petition for leave to appeal). Accordingly, petitioner still has state court remedies available to her and her petition for habeas corpus in this court is premature.

## CONCLUSION

The petition for habeas corpus is denied for failure to exhaust state court remedies.